IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KYLE VESS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CITY OF DALLAS, a municipal | § | CIVIL ACTION NO. |
| corporation, and BRAD ALAN COX | § | 3:21-cv-01764-D |
| | § | |
| | § | JURY DEMANDED |
| Defendants. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

"Our mission is to prevent and suppress fires, educate and rescue citizens, provide emergency medical services, *promote public safety and foster community relations*."

--Dallas Fire Department Core Values and Mission Statement

"#showmemyopponent"

--Dallas Firefighter Brad Alan Cox's Instagram Bio

This case is about an abuse of power and a deliberate indifference to the life and welfare of the underprivileged in Dallas.

Defendant Cox abused his position of public trust as a firefighter and public servant when he took it upon himself to physically injure and subdue Plaintiff because he thought he was homeless, indigent, or a criminal suspect. It does not matter what Plaintiff's actual status was, however, because Defendant Cox's actions

1

violated Fire Department policy, the excessive force standards governing any reasonable police officer or firefighter in his position, and the Constitutional right of every American, irrespective of their class or status, to be free from unreasonable seizures.

Under any standard, a well-placed, violent kick by a professional mixed martial artist to the side of a defenseless person's face who is already under the Dallas Police Department's custody and control constitutes unreasonable, excessive, and deadly force. Defendant Cox should be held accountable for his vicious attack on Plaintiff and the City of Dallas should be held accountable for continuing to employ Defendant Cox, despite his checkered past and apparent indifference to an individual's Constitutional rights.

## I.   PARTIES

1. Plaintiff Kyle Vess is bringing claims to vindicate his civil rights under Section 1983 of the Civil Rights Act of 1871. Plaintiff is a resident of Ellis County, Texas.

2. Defendant City of Dallas is an incorporated city in the State of Texas and may be served with process by serving the city mayor, clerk, secretary, or treasurer, all of whom are located at Dallas City Hall, 1500 Marilla Street, Dallas, Texas 75201. Defendant City of Dallas has made an appearance in this suit.

3. On or before August 2, 2019, and at all relevant times, the Defendant, City of Dallas, a municipal corporation, maintained, as a division of said municipal corporation, a certain fire department, commonly referred to as the Dallas Fire Department.

4. Defendant Brad Alan Cox ("Cox") is an adult individual who, upon information and belief, resides in the State of Texas and is (or was at the time in question) an employee and agent of the Dallas Fire Department. Defendant Cox may be served with process at his place of employment: Dallas Fire Station No. 36 located at 3241 North Hampton Road, Dallas, Texas 75212, or wherever he may be found within the jurisdiction of this Court. Defendant Cox has made an appearance in this suit.

## II.   JURISDICTION & VENUE

5. This is an action brought pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution against Defendants, City of Dallas and Firefighter Cox (in his individual capacity).

6. This Court has personal jurisdiction over each of the Defendants and "federal question" subject matter jurisdiction of the claims and causes of action alleged herein under 28 U.S.C. § 1331.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because the defendants reside or, at the time the events took place, formerly resided

in this judicial district, and the events giving rise to the claims asserted herein occurred in this District.

8. All conditions precedent to the filing of this action have either been performed or waived.

### III. FACTS

9. On or about August 2, 2019, and at all relevant times, when Defendant Cox was engaging in the complained of conduct, he was acting under color of law, in the course of his employment with the Dallas Fire Department, and pursuant to a policy, custom, and/or usage of the City of Dallas Fire Department.

10. On Friday, August 2, 2019, Plaintiff Kyle Vess was walking near 2400 Lone Star Drive, Dallas Texas. At the time, Kyle suffered from the effects of both a mental disability and a previous traumatic brain injury. He was also not current on his medications that treated his medical conditions.

11. At or near the same location and at or around the same time, the Dallas Fire Department responded to an emergency call concerning a small grass fire on the side of the road. On information and belief, Defendant Cox saw Plaintiff near the location of the fire and suspected he was responsible for the fire. On information and belief, Defendant Cox and possibly other Dallas Fire Department personnel engaged Plaintiff to detain him while the Dallas Police Department was called to the scene. During this detention, Defendant Cox physically beat and subdued Plaintiff. On

4

information and belief, Defendant Cox thought that Plaintiff was homeless and indigent based on his appearance and demeanor.

12.     On information and belief, Defendant Cox's actions were inconsistent with Dallas Fire Department policy and procedure because he did not wait for law enforcement to arrive and engage or otherwise handle the alleged suspect. *See also* "DFR changes response to violent calls after slow DPD arrival," https://www.wfaa.com/article/news/local/dallas-county/dfr-changes-response-to-violent-calls-after-slow-dpd-arrival/287-588244791 (last checked on September 22, 2021) (describing Dallas Fire and Rescue policy to wait for police). Defendant City of Dallas, however, provides no training to fire and emergency personnel on the use of force or how to de-escalate public encounters to avoid violent confrontations.[1] Defendant City of Dallas does know, however, that its fire and rescue personnel will be in potential physical encounters and even escalating conflict with patients on the street.[2] Despite this knowledge and the reasonable foreseeability that its personnel

---

[1]     Dallas Fire and Rescue Standard Operating Procedures ("SOPs") make clear that no physical force training or de-escalation training is provided to fire and rescue personnel. The SOPs do, however, establish that Dallas Fire and Rescue considers "negative legal and/or financial ramifications" associated with patient-paramedic encounters and that "unprofessional, escalating conflict between patient and paramedic" is foreseeable because the SOPs affirmatively discourage a fully transparent description of "inappropriate comments" made during any patient encounter. *See* Dallas Fire and Rescue SOP 102.04.D.1-3.

[2]     Dallas Fire and Rescue SOPs state that "if a mentally ill patient is violent or clearly psychotic, the paramedic shall request the presence of a police officer to assist in protecting or restraining the patient." SOP 104.01.E.10. The SOPs also encourage fire and emergency personnel to refrain from fully documenting "inappropriate comments" during encounters because it could "cause DFR EMS to experience negative legal and/or financial ramifications" and "detail an unprofessional, escalating conflict between patient and paramedic."

will be in such situations that may require the use of force, the City of Dallas provides no training whatsoever on appropriate levels of force, or the unreasonable or excessive use of force.

13.   After the Dallas Police Department arrived on the scene, Plaintiff Vess was clearly subdued and lying on the ground on his back. There is a reason for Vess lying on his back: Defendant Cox beat him senselessly after an initial confrontation. Nearby surveillance video footage shows Vess was provoked in some fashion and he swung wildly at Defendant Cox, missing entirely. Defendant Cox, however, did not miss. Defendant Cox kicked Vess while he was on the ground at least six times and then, after a second Dallas firefighter attempted to restrain Defendant Cox, he pushed the firefighter away and continued to kick Vess in the body and head and neck area.

14.   Dallas police officers, Jessica Cuddy and Zachery Johnson, observed Plaintiff lying on the ground. At the time of their arrival, Plaintiff was clearly subdued and lying on his back. Officers Cuddy and Johnson had custodial detention of Plaintiff as he was surrounded entirely by Dallas Police Department, Dallas Fire Department and Dallas Sheriff's Department personnel. During this time, Defendant Cox stood over Plaintiff and verbally threatened and taunted Plaintiff telling him to "Get up again, get up again."

6

15.     Plaintiff began to sit up from his lying position while facing away from the firefighter standing over his head. Defendant Cox's statements caused Plaintiff to look back over his right shoulder to Cox who, without warning, provocation, or reason, kicked the right side of Plaintiff's head with his steel-toed boot.  At the time of the violent assault, Dallas Police Department personnel were on the scene and at least two other Dallas firefighters were casually standing within mere feet of Defendant Cox and Plaintiff. A still capture of the moment just before Defendant Cox's kick landed shows exactly how unnecessary and egregious the violence to Kyle was:



16.     The force of the kick knocked Plaintiff back to the ground, but also caused his "fight or flight" instincts to engage and he jumped up to confront Defendant Cox. The Dallas Police officer standing next to Plaintiff during this

7

incident immediately incapacitated Plaintiff with a taser. Plaintiff was subsequently charged for assault on a public non-law enforcement officer. The incident report filed by the police in connection with the arrest and charge is materially false and misleading because it omits Defendant Cox's dangerous, reckless, and unprovoked kick to the side of Plaintiff's face, which caused a further and unnecessary escalation. Officer Cuddy's bodycam footage at the time clearly shows an individual on the ground sitting up and receiving an unprovoked and violent kick to the head, which prompted an escalation and eventual tasing.

17.   As a result of Defendant Cox's actions, Plaintiff suffered a fractured orbital socket on his face, a fractured sinus, cracked teeth, and now suffers from facial paralysis on the right side of his face. The excessive kick to his face also caused significant further injury to his brain and has significantly worsened his mental condition and long-term prospects.

18.   Defendant Cox is a trained mixed martial arts fighter and has engaged in several professional mixed martial arts fights. Defendant Cox coaches individuals in jiu jitsu and is fully aware of the danger that a forceful kick to the head can cause an individual. Defendant Cox's actions were deliberately indifferent to the safety and welfare of Plaintiff and constituted a clear and present danger to Plaintiff's life at the time of the kick.  Indeed, Texas law considers the use of a trained fighter's

hands or feet as deadly weapons, and Defendant Cox's assault on Plaintiff constituted an aggravated assault on Plaintiff while under police custody.

19. Defendant Cox's kick also violated clearly established standards of force and, as a result, constituted unconstitutional force violating Kyle Vess's fundamental rights. At least one independent expert, veteran police detective and consultant on internal affairs investigations, has gone on record and stated that "the kick by any and all standards was way out of line." The right to be free from unreasonable and excessive force is clearly established under the law.

20. Unfortunately, Defendant Cox is no stranger to violating the civil rights of individuals he suspects of being indigent, homeless, or mentally ill. Defendant Cox is also the Defendant in a pending civil rights case in this District styled *Kelson, et al. v. City of Dallas, et al.*, Case No. 3:18-cv-3308-L. In the *Kelson* case, Defendant Cox is being sued for engaging in deliberate indifference towards a homeless individual and failing to render aid while the individual was in police custody. Defendant Cox is alleged to have laughed at the injured and confused homeless individual, Hirschell Fletcher, instead of rendering aid and care.

21. Defendant Cox was indicted in connection with the *Kelson* case for tampering with government evidence. Defendant Cox falsified a report to cover up his failure to render aid at the scene. The homeless man ultimately lost his life because of Defendant Cox's callous disregard for his well-being care. Defendant

9

Cox ultimately agreed to plead guilty to the charge of falsifying a government report and was sentenced to 12 months of probation and a $500 fine on April 17, 2019. Defendant Cox was on probation when he committed the acts against Plaintiff that are the subject of this lawsuit.

22. Defendant Cox's assault on Plaintiff constitutes a violation of his Conditions of Community Supervision because it was an aggravated assault with a deadly weapon on an individual in police custody, a failure to work faithfully at his employment, a failure to treat all individuals appropriately in accordance with Dallas Fire Department Standard Operating Procedures, and a failure to adhere to all Dallas Fire Department Procedures and Protocols.

23. Defendant City of Dallas has maintained a policy, custom, or practice of avoiding disciplining employees of the Dallas Fire Department with a history of disciplinary problems or complaints. Indeed, Defendant City of Dallas's conduct in the alleged investigation of Defendant Cox is emblematic of an approach designed to protect employees and the City from embarrassment or litigation risk at the expense of public safety. As reported by the Dallas Morning News on October 10, 2021, "Dallas Fire-Rescue never conducted an internal affairs investigation and the public integrity unit quietly cleared Cox."

24. Based on the revelations from the Dallas Morning News and the publication of bodycam footage by the Dallas Observer, District Attorney John

Creuzot's office has reportedly indicated remorse for not earlier exploring an indictment against Defendant Cox and admitted that a thorough investigation was not undertaken. It appears that the City of Dallas Public Integrity Unit and Dallas-Fire Rescue worked to ensure that no further or deeper investigation was done consistent with a practice of ensuring that internal disciplinary matters are not escalated into public view.

25. For instance, surveillance video footage from a nearby location was known to the Public Integrity Unit and was allegedly obtained in August of 2019. The video footage, which clearly shows Defendant Cox senselessly kicking and beating Vess after he was knocked to the ground and defenseless, was not turned over to the Kyle Vess's criminal defense attorney until over two years after the fact and not until after this lawsuit was initially filed. Further, the Public Integrity Unit investigation only took statements from police officers on the scene and did not interview or take sworn statements from any of the Dallas Fire Department personnel.

26. This is a curious and significant omission in the so-called investigation as the bodycam footage reveals at least two firefighters plainly witnessing the egregious kick to Vess's head after Officer Cuddy had arrived on the scene. Incredibly, there was also no interview or sworn statement from either Defendant Cox or the second firefighter that attempted to restrain Defendant Cox during the

11

initial beating of Vess. In fact, the surveillance video shows Defendant Cox pushing that firefighter away so he could continue to kick Vess while he was on the ground. Yet, no statements were taken from this employee.

27. District Attorney Creuzot's acknowledgment of error in failing to prosecute Cox originally, however, does not excuse the City of Dallas from continuing to act consistently in favor of employing individuals that are known risks to the public. Defendant Cox was hired initially in 2002 despite an arrest on his record for suspicion of assault at a birthday party. In at least three other instances after he was hired in 2002, Defendant Cox was reprimanded for refusing to provide medical treatment to patients. In August of 2011, Defendant Cox received a letter of counseling for "unacceptable conduct" related to a patient. It is clear there is something seriously wrong with the City of Dallas's disciplinary and employment retention practices and the City of Dallas's actions currently support a pattern or policy of retention of high risk or dangerous individuals in favor of avoiding embarrassment or litigation risk.

### IV. COUNT 1 – VIOLATION OF 42 U.S.C. § 1983 – UNREASONABLE SEIZURE AND EXCESSIVE FORCE (Against Defendant Cox)

28. Plaintiff repeats and incorporates the allegations of paragraphs one through twenty (1-28) as if fully pled and stated herein.

29. This is an action for damages against Defendant Cox for the deprivation of Plaintiff's Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

30. At all times relevant hereto, Defendant Cox was acting under the color of state law and pursuant to the policy, custom, and/or usage of the City of Dallas Fire Department. Defendant Cox, through his actions described above, deprived Plaintiff of his rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments of the Constitution of the United States, including the right to be free from unreasonable and unlawful seizures of his person. Defendant Cox's assault on Plaintiff was intentional, reckless, and deliberately indifferent to the welfare and safety of Plaintiff's health and life. At the time of Defendant Cox's strike to the head of Plaintiff, it was clearly established that a blow to the head of an individual that is subdued or otherwise custodially detained constitutes unreasonable and excessive force. Indeed, a blow to the head with a deadly weapon is considered deadly force and under no circumstances was deadly force ever necessary or a reasonable option at the time of the attack on Plaintiff.

31. As a direct and proximate foreseeable result of the violations of Plaintiff's constitutional rights, including the rights guaranteed under the Fourth and Fourteenth Amendments, and the misconduct of Defendant Cox, as set forth above, Plaintiff suffered injuries, including being unreasonably seized and subjected to

excessive force and aggravated assault, physical pain and suffering, mental pain and suffering, emotional distress, and disability.

33. As a result of Plaintiff's injuries, Plaintiff is entitled to recover all damages for violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 U.S.C. § 1983.

33. Defendant Cox enjoys no qualified immunity for his egregious actions. The right to be free from unreasonable seizure and the right to be free from excessive force while detained is a clearly established Constitutional right under the Fourth Amendment. No reasonable officer or employee could have believed that they were entitled to beat Vess senselessly or strike Vess across the face with a kick after he was subdued and under the control of at least three police officers. At least one independent expert has opined in the media that "the kick by any and all standards was way out of line."

34. Further, the video footage establishes that Defendant Cox's final kick to Vess's head was done purely out of malice. The video captures Defendant Cox telling Vess to "get up again" just before he kicked him in the head, clearly taunting and inciting Vess to try and fight him. The surveillance video that was withheld by the City for two years shows a significant fight that resulted in Defendant Cox kicking Vess multiple times and even shoved his own colleague away so that he

14

could continue kicking Vess. In context, the actions by Defendant Cox demonstrate malice because they show a paramedic animated by anger and a desire for violence and one that dishonored the mission and values of the Dallas Fire Department.

## V.   COUNT 2 – VIOLATION OF 42 U.S.C § 1983 – POLICY & CUSTOM
### (Against Defendant City of Dallas)

35. Plaintiff repeats and incorporates the allegations of paragraphs one through twenty-five (1-34) as if fully pled and stated herein.

36. At all relevant times, the employees, agents, officers and/or firefighter paramedics of Defendant City of Dallas' Fire Department, including Defendant Cox, were acting under the color of state law and were acting pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant City of Dallas Fire Department. Defendant City of Dallas' policies, practices or customs were both deliberately indifferent to the constitutional rights of its citizens and were the moving force behind Plaintiff's injuries because they led directly to a reckless and dangerous individual being placed in a position of public trust, which was foreseeably abused.

37. Upon information and belief, Defendant City of Dallas Fire Department, including its agents, employees, officers, and/or firefighter paramedics, together with other City of Dallas policymakers and supervisors maintained, inter alia, the following unconstitutional customs, practices and/or policies:

15

      a.    maintaining a policy of inaction and an attitude of indifference towards providing medical treatment for mentally ill persons and homeless people in order to get them off the streets;

      b.    providing inadequate training regarding how to detain and treat mentally ill persons and homeless persons;

      c.    inadequately supervising, training, controlling, assigning, and disciplining City of Dallas Fire Department paramedics, including Defendant Cox, who Defendant City of Dallas knew, or in the exercise of reasonable care, should have known were committing such egregious acts. Specifically, Defendant City of Dallas had actual knowledge of Defendant Cox's careless and deliberately indifferent attitude towards indigent and homeless individuals as a result of his actions as outlined in the *Kelson* case and his own criminal and disciplinary history at the Dallas Fire Department. Defendant City of Dallas' inadequate training, supervising, controlling, and disciplining of Defendant Cox was deliberately indifferent to the constitutional rights of others and was the moving force bearing a direct causal link to Defendant Cox's causing physical injury to Plaintiff as it was a highly predictable outcome given his history; and

      d.    implementing a *de facto* policy and/or custom of protection for previously disciplined personnel by refusing to terminate or separate from

employment individuals unfit to serve as members of the Dallas Fire Department despite good cause for termination and the risk these individuals pose to the public.

36. Defendant City of Dallas Fire Department had actual and/or constructive knowledge of the deficient policies, practices and customs alleged above. Despite having this knowledge, the Defendant City of Dallas condoned, tolerated, and through its own actions or inactions thereby ratified such policies. Defendant also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff.

38. As a direct and proximate result of the Constitutional violations caused by the employees, agents, officers, and/or firefighter paramedics of the Defendant City of Dallas Fire Department, and other policy makers, Plaintiff suffered violations of his Constitutional rights guaranteed to him by the Fourth and Fourteenth Amendments of the United States Constitution, and suffered severe physical and emotional injuries. As a result of Defendant Cox's and the City of Dallas Fire Department's actions or inactions, Plaintiff suffered injuries and is entitled to recover all damages allowable for constitutional violations pursuant to 42 U.S.C. § 1983, including compensatory damages, special damages, economic damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 U.S.C. §1983.

17

## VI. COUNT 3 – EXEMPLARY DAMAGES
### (Against Defendant Cox)

39.   Because the actions and conduct of Defendant Cox were taken with evil motive and intent or involve the reckless or callous disregard of, or indifference to, the federally protected rights and safety of Plaintiff and others, Plaintiff is entitled to exemplary and punitive damages from Defendant on account of his violation and deprivation of Plaintiff's constitutional and civil rights under color of law and in violation of 42 U.S.C. § 1983. Plaintiff requests that punitive and exemplary damages be imposed on Defendant on account of such callous indifference to Plaintiff's civil rights and their malicious conduct, actions, and omissions. Under the circumstances, exemplary damages are appropriate because Defendant's conduct warrants punishment and deterrence.

## VII. REQUEST AND DEMAND FOR JURY TRIAL

40.   Plaintiff hereby asserts his rights to a jury trial under the Seventh Amendment of the United States Constitution and hereby requests and demands a trial by jury on all claims, causes of action, other issues, and matters to which he is entitled.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants, awarding compensatory damages, special damages, economic damages, exemplary damages, attorney's fees, and all other and further relief to which they may be justly entitled.

DATED: October 14, 2021

Respectfully submitted,

SOMMERMAN, MCCAFFITY,
QUESADA & GEISLER, L.L.P.

 */s/ Sean J. McCaffity*
Sean J. McCaffity
State Bar No. 24013122
Jody L. Rodenberg
State Bar No. 24073133
3811 Turtle Creek Blvd., Suite 1400
Dallas, Texas  75219-4461
214-720-0720 (Telephone)
214-720-0184 (Facsimile)
SMcCaffity@textrial.com
JRodenberg@texrial.com

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing First Amended Complaint was served on opposing counsel of record via ECF notice on October 14, 2021.

 */s/ Sean J. McCaffity*
Sean J. McCaffity