IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KYLE VESS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-01764-D |
| | § | |
| CITY OF DALLAS, a municipal corporation, | § | |
| and BRAD ALAN COX, | § | |
| | § | |
| *Defendants*. | § | |

## DEFENDANT CITY OF DALLAS'S MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT, AND BRIEF IN SUPPORT

CITY ATTORNEY OF THE CITY OF DALLAS

Christopher J. Caso
City Attorney

*/s/* J. Cheves Ligon
J. Cheves Ligon
Senior Assistant City Attorney
Texas State Bar No. 24070147
john.ligon@dallascityhall.com

Lindsay Wilson Gowin
Senior Assistant City Attorney
Texas State Bar No. 241114001
lindsay.gowin@dallascityhall.com

Devin Q. Alexander
Assistant City Attorney
Texas State Bar No. 24104554
devin.alexander@dallascityhall.com
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:   214-670-3519
Facsimile:   214-670-0622

*Attorneys for Defendant City of Dallas*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

I.      SUMMARY OF MOTION ....................................................................... 1

II.     BRIEF FACTUAL SUMMARY AND PROCEDURAL HISTORY ................ 2

III.    ARGUMENT AND AUTHORITIES REQUIRING DISMISSAL ................... 3

        A.      Applicable Legal Standards for Rule 12(b)(6) Motions ............... 3

        B.      Plaintiff's Complaint fails to state a plausible claim for relief under 42
                U.S.C. § 1983 against the City based on a theory of municipal liability ............ 5

                1.      Plaintiff has not sufficiently alleged that the use of force at
                        issue was pursuant to an official City policy. .................................... 6

                        a.      Plaintiff wholly fails to allege any pattern of
                                constitutional violations. ........................................... 10

                        b.      Plaintiff cannot show a City policy of willful
                                indifference through Cox's actions alone. ..................... 13

                2.      Plaintiff has not plausibly alleged the City's supposed inactions
                        were the "moving force" behind his injuries. ............................. 17

IV.     CONCLUSION ..................................................................................... 20

CERTIFICATE OF SERVICE .............................................................................. 21

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................... 4, 5, 7

*Barrios-Barrios v. Clipps*,
   825 F.Supp.2d 730 (E.D. La. 2011) ............................................................... 15, 18

*Bd. of Comm'rs of Bryan Cnty. v. Brown*,
   520 U.S. 397 (1997) ........................................................................... 9, 10, 17, 20

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 4, 7

*Bibbins v. City of Baton Rouge*,
   489 F. Supp. 2d 562 (M.D. La. 2007) .............................................................. 19

*Bolton v. City of Dallas*,
   541 F.3d 545 (5th Cir. 2008) ........................................................................... 6

*Brown v. Bryan County*,
   219 F.3d 450 (5th Cir. 2000) ...................................................................... 10, 13

*Burge v. St. Tammany Par.*,
   336 F.3d 363 (5th Cir. 2003) ............................................................... 9, 10, 13

*City of Canton v. Harris*,
   489 U.S. 378 (1989) ..................................................................... 8, 9, 10, 14, 20

*Conley v. Gibson*,
   355 U.S. 41 (1957) ........................................................................................ 4

*Culbertson v. Lykos*,
   790 F.3d 608 (5th Cir. 2015) ........................................................................... 8

*Davis v. City of N. Richland Hills*,
   406 F.3d 375 (5th Cir. 2005) .......................................................................... 12

*Deville v. Marcantel*,
   567 F.3d 156 (5th Cir. 2009) ........................................................................... 8

*Estate of Davis ex rel. McCully v. City of North Richland Hills*,
   406 F.3d 375 (5th Cir. 2005) ........................................................................... 7

*Fernandez-Montes v. Allied Pilots Ass'n*,
   987 F.2d 278 (5th Cir. 1993) ........................................................................... 4

*Flanagan v. City of Dallas*,
    48 F. Supp. 3d 941 (N.D. Tex. 2014) ................................................................. 11

*Fuentes v. Nueces County*,
    689 F. App'x 775 (5th Cir. 2017) ...................................................................... 11

*Groden v. City of Dallas*,
    826 F.3d 280 (5th Cir. 2016) .............................................................................. 6

*Hutcheson v. Dallas Cty., Texas*,
    994 F.3d 477 (5th Cir. 2021) ............................................................................. 16

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ............................................................................... 4

*Jackson v. Procunier*,
    789 F.2d 307 (5th Cir. 1986) ............................................................................... 4

*Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) ............................................................................. 4

*Littell v. Hous. Indep. Sch. Dist.*,
    894 F.3d 616 (5th Cir. 2018) ................................................................. 6, 14, 18

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*,
    369 F.3d 464 (5th Cir. 2004) ............................................................................... 4

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) .................................................................................... 5, 17

*Pagan-Negron v. Seguin Indep. Sch. Dist.*,
    974 F. Supp. 2d 1020 (W.D. Tex. 2013) ........................................................... 10

*Papasan v. Allain*,
    478 U.S. 265 (1986) ........................................................................................... 4

*Peña v. City of Rio Grande*,
    879 F.3d 613 (5th Cir. 2018) ........................................................................... 6, 9

*Peterson v. City of Fort Worth*,
    588 F.3d 838 (5th Cir. 2009) ........................................................................... 10

*Pineda v. City of Houston*,
    291 F.3d 325 (5th Cir. 2002) ........................................................................... 11

*Piotrowski v. City of Houston*,
    237 F.3d 567 (5th Cir. 2001) .................................................................. 5, 6, 7, 8

*Ratliff v. Aransas Cty.,*
    948 F.3d 281 (5th Cir.), *cert. denied,*
    141 S. Ct. 376 L. Ed. 2d 97 (2020) ...................................................................... 18

*Smith v. Brenoettsy,*
    158 F.3d 908 (5th Cir. 1998) ............................................................................... 7

*Spiller v. City of Tex. City, Police Dep't,*
    130 F.3d 162 (5th Cir. 1997) ............................................................................... 9

*Tennessee v. Garner,*
    471 U.S. 1  (1985) ............................................................................................. 13

*Valle v. City of Houston,*
    613 F.3d 536 (5th Cir. 2010) ........................................................................ 17, 18

*Webster v. City of Houston,*
    735 F.2d 838 (5th Cir. 1984) ............................................................................... 6

## STATUTES

42 U.S.C. § 1983 ........................................................................................................ 5

## RULES

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 3

Fed. R. Civ. P. 8(a)(2) ............................................................................................... 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KYLE VESS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-01764-D |
| | § | |
| CITY OF DALLAS, a municipal corporation, | § | |
| and BRAD ALAN COX, | § | |
| | § | |
| *Defendants*. | § | |

## DEFENDANT CITY OF DALLAS'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, AND BRIEF IN SUPPORT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant City of Dallas ("City"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, files this Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"). Specifically, the City moves to dismiss all claims alleged against it in the Plaintiff's First Amended Complaint (ECF No. 17) (the "Complaint"), and respectfully shows the Court as follows.

### I.   SUMMARY OF MOTION

The City is entitled to dismissal of Count 2 of the Complaint, asserting constitutional claims under 42 U.S.C. § 1983 against the City, because the Plaintiff fails to plead nonconclusory facts sufficient to state a plausible claim. The Plaintiff's well-pleaded factual allegations do not permit this Court to draw a reasonable inference that the City is liable for its employee's alleged wrongdoing, and the Complaint omits allegations necessary to make plausible a municipal liability claim based upon alleged customs pertaining to the training and supervision of Defendant Brad Alan Cox ("Cox"). The Complaint contains no facts that permit a reasonable inference that City customs having the force of official City policy were the legal cause of a use of excessive force violative of the Fourth Amendment against Plaintiff, or that the City's final policymakers for the

Dallas Fire-Rescue Department were deliberately indifferent to a known or obvious risk that the City's alleged customs would result in any of the harms alleged by Plaintiff.  As such, Plaintiff's allegations as to the City are bare, conclusory assertions of misconduct which are "merely consistent with" municipal liability and are insufficient to support a municipal liability claim under § 1983 as a matter of law.

## II.  BRIEF FACTUAL SUMMARY AND PROCEDURAL HISTORY

The Plaintiff, Kyle Vess (Plaintiff), alleges[1] that on August 2, 2019, he suffered from the effects of a mental disability and a prior traumatic brain injury, and he was not current on the medication that treated his condition.  Compl. ¶ 10.  Plaintiff alleges that he was walking near Lone Star Drive in Dallas when he encountered Cox, a Dallas Fire-Rescue ("DFR") employee.  *Id.* ¶¶ 10-11.  Cox and other DFR personnel were nearby responding to an emergency call concerning a small grass fire on the side of the road.  *Id.* ¶ 11.  Plaintiff alleges that Cox suspected Plaintiff was the person responsible for the fire, and that Cox sought to detain Plaintiff until Dallas Police Department ("DPD") officers arrived.  *Id.*  Plaintiff alleges that in the course of the detention, Cox physically beat and subdued Plaintiff.  *Id.*  Plaintiff alleges that after DPD officers arrived on the scene and placed him in custodial detention, Cox, without warning or provocation, kicked the right side of Plaintiff's head with a steel-toed boot as Plaintiff attempted to sit up from lying on the ground.  *Id.* ¶¶ 13-15.  The force of the kick knocked Plaintiff back to the ground, which caused his "fight or flight" instincts to emerge, resulting in Plaintiff jumping up to confront Cox.  *Id.* ¶ 16.  A DPD officer who was standing near Plaintiff immediately deployed her TASER and incapacitated Plaintiff.  *Id.*  Plaintiff was subsequently charged with assault on a non-law

---

[1] The City does not agree with all the Plaintiff's factual allegations but recites them in this Motion to provide the Court essential background information about the nature and factual allegations upon which the Plaintiff bases his claims against the City.

enforcement officer.  *Id.*  Plaintiff claims that Cox's use of force caused injury to his face, teeth, and head, and significant further injury to his brain that has worsened his mental condition and "long-term prospects."  *Id*. at ¶ 17.  Plaintiff alleges that at the time of the encounter, Cox's actions were inconsistent with DFR's policies and procedures.  *Id*. ¶ 12.

On July 29, 2021, Plaintiff filed suit under 42 U.S.C. § 1983, asserting claims against the City and Cox for a deprivation of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.  (ECF. No. 1.)  Subsequently, the City filed its 12(b)(6) Motion to Dismiss for failure to state a claim on August 20, 2021.  (ECF. No 5.)  Plaintiff's Response, filed September 24, 2021 (ECF. No 12), requested leave for numerous amendments.  *See id*. at n.1, 2, 4.  To avoid waste of judicial resources, undersigned counsel agreed to Plaintiff's Motion for Leave to File Amended Complaint.  (ECF. 15.)  Plaintiff thereafter filed his First Amended Complaint on October 14, 2021, the subject of this Motion.

Plaintiff's § 1983 claim against the City arise from an alleged use of excessive force by Cox in the course of a seizure.  Compl. at ¶¶ 28-34.  Plaintiff pleads that the City had a variety of unconstitutional policies, customs and/or practices, including a policy of inaction and an attitude of indifference towards treating homeless and mentally ill persons, a policy of inadequately training DFR personnel on how to detain and treat homeless and mentally ill persons, customs of constitutionally deficient DFR training, supervision, and discipline of employees concerning proper detention and treatment of homeless and mentally ill persons, which were the legal cause-in-fact of Cox's alleged misconduct.  *Id*. ¶¶ 35-38.

### III.    ARGUMENT AND AUTHORITIES REQUIRING DISMISSAL

**A.    Applicable Legal Standards for Rule 12(b)(6) Motions**

Rule 12(b)(6) provides for dismissal of a claim if the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6)

tests the legal sufficiency of the claims stated in the complaint and must be evaluated solely on the basis of the pleadings. *Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). The allegations contained in the complaint are to be construed in the plaintiff's favor and all *well-pleaded* facts are to be accepted as true. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, conclusory allegations and legal conclusions couched as factual allegations are not to be accorded a presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (emphasizing that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) ("Although we must accept as true the well-pleaded allegations of a complaint . . . we do not accept as true conclusory allegations in the complaint"); *see also Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (legal conclusions masquerading as factual assertions are insufficient to prevent dismissal for failure to state a claim). While the complaint need not contain "detailed factual allegations," the plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Therefore, and critically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Furthermore, the alleged facts must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555 (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). Thus, to

survive a motion to dismiss made pursuant to Rule 12, a complaint must contain sufficient factual

matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* . at 570.  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678 (citation omitted).  "The plausibility standard is not akin to a 'probability requirement,' but

it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation

omitted).  If a complaint pleads facts that are "merely consistent with" a defendant's liability, it

stops short of the line between possibility and plausibility of entitlement to relief.  *Id..* (internal

quotation marks and citation omitted).  "[W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (applying Fed. R. Civ. P. 8(a)(2)

(requiring "a short and plain statement of the claim showing the pleader is entitled to relief[]")).

**B.      Plaintiff's Complaint fails to state a plausible claim for relief under 42 U.S.C.
         § 1983 against the City based on a theory of municipal liability.**

Plaintiff seeks to hold the City liable under 42 U.S.C. § 1983, which makes liable "[e]very

person" who, under color of state law, violates federal constitutional rights.  For this purpose,

municipal entities like the City qualify as "persons."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

690 (1978).    But the City "cannot be held liable under § 1983 on a *respondeat

superior* theory." *Id.*  Isolated unconstitutional actions by municipal employees will almost never

trigger municipal liability.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)

(citations omitted)).  Rather, to hold the City liable under § 1983 a plaintiff must establish that an

"official policy" of the City *itself* – and not the policy of an individual city official – was the

"moving force" and actual cause of the loss of constitutional rights and any resultant harm.  *Id.*

Thus, to state a § 1983 claim against the City, the Complaint must allege sufficient facts to permit the reasonable inference (1) that a constitutional violation occurred, and (2) an "official policy" attributable to the City's policymakers that (3) "was the moving force" behind it. *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622–23 (5th Cir. 2018); *see Peña v. City of Rio Grande*, 879 F.3d 613, 621 (5th Cir. 2018); *Groden v. City of Dallas*, 826 F.3d 280, 283–85 (5th Cir. 2016).

### 1. <u>Plaintiff has not sufficiently alleged that the use of force at issue was pursuant to an official City policy.[2]</u>

The Plaintiff's Complaint does not allege that Cox acted pursuant to any alleged unconstitutional written policy of the City. Compl. ¶¶35-38. Instead, Plaintiff relies on alleged "unconstitutional customs and practices." *Id.* The Fifth Circuit reiterated in *Piotrowski* that, while official policy "is ordinarily contained in duly promulgated policy statements, ordinances, or regulations," it may arise from a custom, previously defined by the Fifth Circuit in *Webster v. City of Houston* as

> [A] persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.

*Piotrowski*, 237 F.3d at 579 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

---

[2] The City does not concede that Plaintiff's Complaint alleges facts sufficient to state a plausible claim against Cox for a deprivation of constitutional rights under the Fourth or Fourteenth Amendments. Plaintiff moreover does not plead that the City's final policymaker, the Dallas City Council, acted with deliberate indifference concerning the customs and policies alleged in the Complaint. Rather, the Complaint alleges that "Defendant City of Dallas Fire Department, including its agents, employees, officers, and/or firefighter paramedics, together with other City of Dallas policymakers and supervisors maintained . . . unconstitutional customs, practices and/or policies." Compl. ¶ 37. While it is not necessarily fatal at the pleading stage that the Plaintiff fails to articulate the "the specific identity of the policymaker," *Groden*, 826 F.3d at 284, he must still "plead facts that show that Cox acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker. *Id.* at 282. It has been long recognized that under Texas law, the Dallas City Council is the City's final policymaker. *Id.* at 286 (citing *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008)). For purposes of this Motion only, the City assumes a constitutional violation, and that the allegations pertaining to "other City of Dallas policymakers" referenced in the Complaint mean the Dallas City Council. Accordingly, the City will focus upon Plaintiff's failure to plead facts sufficient to establish that the City's final policymakers were deliberately indifferent to any alleged policy or custom of inadequate employee training or supervision, and Plaintiff's failure to plead facts which show that any such policy or custom was the legal cause of Plaintiff's injuries.

However, it is not sufficient that a plaintiff simply offer the raw assertion that there was a custom having the force of municipal policy. *Piotrowski* requires Plaintiff to specifically identify the official policy (custom) that is alleged to have caused the constitutional harm:

> It follows that that each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff, and it must be determined whether each one is facially constitutional or unconstitutional.

*Piotrowski*, 237 F.3d at 579-80.

Absent a facially unconstitutional policy or custom, municipal liability under § 1983 can only arise from a custom having the force of official policy if the municipal policymakers were deliberately indifferent to the "'known or obvious consequences' that constitutional violations would result" from the custom. *Piotrowski*, 237 F.3d at 579. In *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375 (5th Cir. 2005), the Fifth Circuit stated that "[f]or an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be *Estate of Davis*, 406 F.3d at 381 drawn that a substantial risk of serious harm exists, and he must also draw the inference." (citing *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (internal quotation marks and citations omitted)). Thus, a sufficient complaint must provide adequate "factual content" to make deliberate indifference by the City's official policymakers not merely conceivable, but plausible in the context of the facts alleged. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

As a threshold matter, Plaintiff's Complaint repeatedly states and freely admits that Cox's alleged assault on Plaintiff was in fact *contrary* to City policy. Compl. at ¶ 12 ("Defendant Cox's actions violated Fire Department policy"), ¶ 12 ("Defendant Cox's actions were inconsistent with

Dallas Fire Department policy and procedure"), ¶ 22 ("Defendant Cox's assault on Plaintiff constitutes . . . a failure to adhere to all Dallas Fire Department Procedures and Protocols").  Thus, Plaintiff's municipal liability claim against the City appears to be premised on a theory that it is responsible for when its employees violate City rules.  Compl. ¶ 37.b-c.

Plaintiff attempts to plead around the case law and arguments the City made in its prior Motion to Dismiss by now proffering the following new fact pattern: Cox brutally, needlessly, and intentionally assaulted Plaintiff (*see, e.g.*, Compl. ¶¶ 11; 13; 15; 16); Cox's actions violated the City's policies and protocols of having DFR personnel wait for law enforcement to handle violent and/or disturbed suspects like Plaintiff (*id.* ¶¶ 12; 22); yet somehow, the City's alleged failure to train and supervise non-law-enforcement personnel on use-of-force protocols was itself unconstitutional *and* the moving force behind fireman Cox's vicious, repeated kicks to Plaintiff's body and head (*id.* ¶¶ 35-38).  Based on these plead facts, Plaintiff's burden to allege any failure-to-train or failure-to-supervise liability for the City is insurmountable.

The Supreme Court established in *City of Canton v. Harris,* 489 U.S. 378 (1989) the method of proving municipal liability based on a "policy" of inadequate training or a failure-to-train theory.  489 U.S. at 386–92.  Under *Canton*, when a municipal entity fails to train its employees to act in a constitutional manner, that failure constitutes "official policy" that can support municipal liability if it "amounts to deliberate indifference" to the rights of persons with whom the public official will come into contact.  *Id.* at 388; *Culbertson v. Lykos*, 790 F.3d 608, 625 (5th Cir. 2015).  Likewise, a claim based upon a municipality's failure to supervise or discipline a public official requires the same showing of a policymaker's deliberate indifference to the constitutional rights of citizens.  *Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009) (citing *Piotrowski*, 237 F.3d at 581).  To plead a *Monell* claim based upon alleged City customs of

deficient training and supervision, a plaintiff must plead facts supporting deliberate indifference by the City's final policymakers to a specific inadequacy in the City's training, supervision, or discipline of its officers.

To prove deliberate indifference, a plaintiff must show that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training *is so obvious*, and the inadequacy *so likely* to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390 (emphasis added). The "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Comm'rs of Bryan Cnty. v. Brown ("Brown")*, 520 U.S. 397, 410 (1997). Thus, when government policymakers are on actual or constructive notice that a particular omission in their training program causes government employees to violate citizens' constitutional rights, the government may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.* at 407. The government's "'policy of inaction'" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S., at 395 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities . . ." *Id.* at 392.

To proceed beyond the pleading stage, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City,* 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)) (footnote

omitted).   *Canton* and Fifth Circuit jurisprudence envision two means of proving deliberate indifference:

First, municipal employees can violate constitutional rights "so often" that the factfinder can infer from the pattern of violations that "the need for further training must have been plainly obvious to the . . . policymakers." *Canton*, 489 U.S. at 390 n.10; *Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003).  This "proof-by-pattern" method is "ordinarily necessary." *Brown*, 520 U.S. at 409.

Second, even absent proof of pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Id.* (construing *Canton*, 489 U.S. at 390 & n.10); *accord Brown v. Bryan County ("Bryan County")*, 219 F.3d 450, 459–61 (5th Cir. 2000).  This has been called the "single-incident exception" in the Fifth Circuit.  *Burge*, 336 F.3d at 372-73.

Here, Plaintiff's Complaint fails to plead facts sufficient to meet either means of pleading deliberate indifference to support Plaintiff's claim against the City.

### a.   Plaintiff wholly fails to allege any pattern of constitutional violations.

First, Plaintiff fails to allege facts that show or facts from which the Court could reasonably infer a pattern of similar constitutional violations.  A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference.  *Brown*, 520 U.S. at 409.  "A pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy."  *Id.* (quotation marks and citation removed.)  Where a plaintiff relies on prior incidents to prove a pattern, "they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the [municipality]

that the objectionable conduct is the expected, accepted practice of [municipality] employees." *Id.*; *Pagan-Negron v. Seguin Indep. Sch. Dist.*, 974 F. Supp. 2d 1020, 1032 (W.D. Tex. 2013) ("Where the liability is based on informal custom, the practice must be so widespread as to have the force of law.")  The pattern of abuses must "transcend[] the error made in a single case." *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009).  A pattern requires "sufficiently numerous prior incidents," as opposed to "isolated instances."  *Id.*

This is a high bar.  *See id.* (noting that twenty-seven incidents of excessive force over a period of four years did not "reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the city liable for the acts of its employees' unconstitutional conduct."); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (holding that eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry); *see also Fuentes v. Nueces County*, 689 F. App'x 775, 778 (5th Cir. 2017) ("Although there is no rigid rule regarding numerosity, [the Fifth Circuit has found] that 27 prior incidents of excessive force over a three-year period . . . and 11 incidents offering 'unequivocal evidence' of unconstitutional searches over a three-year period . . .were not sufficiently numerous to constitute a pattern.")

Plaintiff does not allege any semblance of a pattern of City-wide personnel misbehavior or an alleged use of unconstitutional force by DFR employees similar to the conduct giving rise to the claims in the Complaint.   Rather, Plaintiff's Complaint simply recites bare bones allegations of the City's alleged failure to train and put in place adequate procedures to prevent the alleged violations.  *See* Compl. ¶¶ 12, 27.  Tellingly, Plaintiff inserted in his new Complaint the following bald, conclusory assertion: "It is clear there is something seriously wrong with the City of Dallas's disciplinary and employment retention practices and the City of Dallas's actions *currently support*

*a pattern* or policy of retention of high risk individuals in favor of avoiding embarrassment or litigation risk."   *Id.* ⁋ 27 (emphasis added.)   However, Plaintiff does not point to other similar incidents to establish, or from which this court can reasonably infer, an actual pattern sufficient to represent an official municipal policy of failing to discipline DFR employees or retaining high risk individuals as required by Fifth Circuit precedent.  *See, e.g.*,  *Flanagan v. City of Dallas*, 48 F. Supp. 3d 941, 954 (N.D. Tex. 2014) (finding that "[w]hile it was a close call," 12 shootings *in the same year* as the shooting at issue, along with other facts regarding prior shootings, were sufficient to infer a "persistent, widespread practice by DPD officers" at the motion to dismiss stage.) Indeed, Plaintiff does not identify even one other instance in which a DFR employee other than Cox allegedly violated the Constitution by allegedly using excessive force against a homeless or mentally person in a manner similar to Cox.

The only other incidents that Plaintiff cites to support a pattern of prior misconduct are a handful of incidents related to Cox—and only Cox.  Plaintiff alleges: Cox had an arrest (but no conviction) for assault twenty years ago (*id.* ⁋ 27); had three instances of refusing to provide medical treatment to patients (*id.*); either additionally to, or as part of, the "three instances" cited above, refused to provide medical services in the ongoing *Kelson v. City of Dallas et al.* litigation (*id.* ⁋ 20); and a has tampering-with-evidence charge related to the *Kelson* matter (*id.* ⁋ 21.)

There is no allegation whatsoever in the Complaint or in any of the above instances that Cox had previously used excessive force against a person (let alone one who was homeless or mentally ill) during his tenure as a DFR employee, nor any other use-of-force incidents except for an alleged assault two decades ago that resulted in his arrest.  The Supreme Court and Fifth Circuit have been clear that a pattern must be gleaned from prior *similar* incidents.  Accordingly, not only must there have been sufficiently numerous prior bad acts, but those prior acts must be "fairly

similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party." *Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005). Plaintiff's pleadings simply do not meet that standard. Plaintiff's Complaint does not allege that Cox denied Plaintiff medical care. Thus, even the alleged incidents on which the Plaintiff relies to establish a "pattern" would not have provided the City with either actual or constructive knowledge of a City-wide custom of DFR employees using excessive force against mentally ill or homeless persons, or that there was a deficiency in training concerning the treatment of mentally ill or homeless persons by DFR personnel.

As the Supreme Court has found, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 61–62. Therefore, Plaintiff's Complaint does not even remotely allege facts sufficient to establish the ordinarily necessary "proof-by-pattern" to support his claim against the City.

### b. Plaintiff cannot show a City policy of willful indifference through Cox's actions alone.

Second, Plaintiff fails to allege facts that show, or facts from which this Court can reasonably infer, that the City's policymakers were deliberately indifferent to a deficiency in training or oversight. Absent proof of pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Bryan County*, 219 F.3d at 459–61; *Burge*, 336 F.3d at 373 ("[I]n a limited set of cases, a plaintiff, unable to show a pattern of constitutional violations, may establish deliberate indifference by showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights," such that "it should have been apparent to the policymaker that

a constitutional violation was the highly predictable consequence of a particular policy or failure to train.") (citation omitted) (quotation marks omitted).  The Supreme Court explained as much in *Canton*, by way of hypothetical:

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, *see Tennessee v. Garner*, 471 U.S. 1 [105 S.Ct. 1694, 85 L.Ed.2d 1] (1985), can be said to be "so obvious[ ]" that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

489 U.S. at 390 n.10.

As the Fifth Circuit has noted, "[w]ithout a pattern of constitutional violations, deliberate indifference can be inferred only in narrow and extreme circumstances like those of *Canton*'s hypothetical.  And in the thirty years since *Canton* issued, *actual* cases reaching those extremes have proved fortunately rare."  *Littell*, 894 F.3d at 627 (emphasis in original).  Indeed, the *Littell* court noted that, prior to its decision in that case to find such an narrow and extreme set of allegations at the pleadings stage, only one plaintiff in the "single incident" case scenario has ever prevailed in the Fifth Circuit.  *Id*. at n.6.

A sampling of the few controlling scenarios in which *Canton*'s "single incident" failure-to-train liability could conceivably attach are instructive.  In *Littell*, the Fifth Circuit found at least plausible the obvious need for "some training" in the context of a mass strip search of middle school students.  *Littell*, 894 F.3d at 619.  In that case, twenty-two preteen girls were, without reasonable suspicion, subjected to a search of their underwear after $50 went missing in a sixth-grade choir class and no one fessed up.  The school district allegedly permitted "school officials to conduct invasive searches" of students.  But it did so with no training whatsoever.  *Id.* at 619-20.  The court found that the search occurred when already-settled Supreme Court law had "made

14

clear" that a search of a student's underwear is impermissibly intrusive unless the school officials reasonably suspect either that the object of the search is dangerous, or that it is likely to be hidden in the student's underwear.  *Id.* at 623.   There, without the benefit of "some training," it was plausibly inevitable that school officials would be unaware of the Court's strict constraints of such invasive measures during a search.

In *Connick*, the Supreme Court addressed the single incident scenario where a plaintiff sued under § 1983 after an exculpatory blood test was suppressed by prosecutors, leading to a wrongful conviction.  *Connick*, 563 U.S. at 57.   However, while there was allegedly no *Brady* training in the district attorney's office, the Court found no "obvious" need for such training given, *inter alia*, the educational requirements, legal training, and Continuing Legal Education requirements necessary for attorneys to practice law in the office.  *Id.* at 64–65.  While the record in this litigation remains undeveloped at this stage, Plaintiff, as previously noted, has alleged that the City's DFR employees were without any training at all.  Rather, they allege that the City failed to provide "adequate" training and supervision related to the mentally ill and intoxicated.  *See* Compl. ⁋ 37.  However, that allegation is not sufficient to establish municipal liability.  Indeed, "[p]roof of the need for better hiring practices, training or supervision does not itself establish that the City Defendants are liable."  *Barrios-Barrios v. Clipps*, 825 F.Supp. 2d 730, 746 (E.D. La. 2011).  "[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability.  [P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct[,] will not suffice."  *Connick*, 563 U.S. at 68 (quotation omitted).

Here, Plaintiff's new Complaint attempts to plead around the strict requirements of the single-issue exception by claiming the City provided "no training" to DFR personnel in hopes such

15

a talismanic phrase shoehorns his case into the *Littell* framework.  Specifically, Plaintiff alleges

the City provided "no training" *on use of force*.  Compl. ⁋ 12.  On the other hand, as already noted,

Plaintiff explicitly acknowledges the City *has* policies and procedures for DFR personnel to wait

until law enforcement "arrive and engage or otherwise handle the alleged suspect."  *Id*.  In

paragraph 12 of the Complaint, Plaintiff links to a WFAA news article from a year prior to the

incident at issue entitled "DFR changes response to violent calls after slow DPD arrival," with a

subtitle (and the substance of the article explaining):

> Dallas-Fire Rescue says it will now stage at a "safe location" and wait for Dallas
> Police to arrive before entering a potentially violent situation involving suspects
> or weapons.

https://www.wfaa.com/article/news/local/dallas-county/DFR-changes-response-to-violent-calls-after-slow-dpd-arrival/287-588244791 (last visited on 10/21/2021.)

In other words, according to Plaintiff's pleadings, the City's policy was for Cox to remove himself

to a safe place until law enforcement—extensively trained on use of force and de-escalation—

arrived, and to not engage in the apprehension and subduing of a criminal suspect and/or disturbed

individual as is incumbent on law enforcement.  And notably, Plaintiff does *not* allege that Cox

did not receive adequate training on the department's protocol that DFR members should await

the arrival of police in such situations.  Thus, Plaintiff's claim based on "no training" principally

fails because it does not link Cox's alleged conduct to  the rules and regulations Plaintiff cites in

his Complaint and claims Cox violated.  Rather, Plaintiff somehow seeks to hold the City liable

by asserting it provided "no training" to DFR firemen and rescue personnel on the *use of force*,

which is  unrelated to the alleged policy and imposes a non-existent legal duty, perhaps in the oft

chance that if DFR employees disobey DFR policy and engage with suspects like Plaintiff, *they*

*will properly use force they were not supposed to use to begin with.*

In sum, Plaintiff's allegations that the City provided inadequate or "no" training is insufficient to establish the requisite deliberate indifference for municipal liability. Under Fifth Circuit precedent, Plaintiff's set of facts does not fit into the *Canton* hypothetical of narrow and extreme circumstances giving rise to municipal liability absent allegations of the existence of a pattern of similar alleged constitutional violations.

### 2. Plaintiff has not plausibly alleged the City's supposed inactions were the "moving force" behind his injuries.

Even if Plaintiff had alleged sufficient facts to establish a policy or custom of inadequate training, which he has not, Plaintiff fails to adequately plead that the inadequate training caused a deprivation of Plaintiff's constitutional rights. Plaintiff asserts only conclusory allegations of causation and fails to connect the lack of training or procedures to the complained-of injury. As in his prior Complaint, Plaintiff again alleges in conclusory fashion that the City's failure to implement an adequate training program resulted in harm to him: "As a direct and proximate result of the Constitutional violations caused by the employees, agents, officers, and/or firefighter paramedics of the Defendant City of Dallas Fire Department, and other policy makers, Plaintiff suffered violations of his Constitutional rights guaranteed to him by the Fourth and Fourteenth Amendments." Compl. ⁋ 38.

As an initial matter, Plaintiff improperly imports general tort law concepts of "direct and foreseeable result" causation into a section 1983 case. Such a causation standard could easily collapse municipal liability into *respondeat superior*, something foundational civil rights jurisprudence directly prohibits. *Monell,* 436 U.S. at 690.

Plaintiff, instead, must allege facts which show "moving force" causation to establish his § 1983 claims. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). To show "moving force causation," Plaintiff must demonstrate a "direct causal link" between the municipality's

policy and the deprivation of Plaintiff's federal rights.  *Id.* at 542, 546 (citing *Brown*, 520 U.S. at 404).  "[T]he connection must be more than a mere 'but for' coupling between cause and effect. The deficiency in training, hiring, or supervision must be the actual cause of the constitutional violation."  *Valle*, 613 F.3d at 546 (quotation omitted).

> As one court in this circuit explained, in the police training context:
>
> [e]ven showing the obviousness of a need for additional training regarding the constitutional obligations of police officers may not be enough to establish deliberate indifference because it does not necessarily mean that the officers will so obviously make wrong decisions that failing to train them amounts to a decision by the city itself to violate the Constitution.

*Barrios-Barrios*, 825 F.Supp.2d at 746-47 (citing *Connick*, 563 U.S. at 70) (quotation marks omitted).

Moreover, the Fifth Circuit has held that "absent specific allegations supporting a plausible causation inference, this legal conclusion does not state a claim for relief and warrants dismissal under Rule 12(b)(6)."  *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 376, 208 L. Ed. 2d 97 (2020).  Thus, to adequately allege causation at the pleading stage, Plaintiff's pleadings must be able to plausibly answer: "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?"  *Littell*, 894 F.3d at 629 (citation omitted).

According to Plaintiff's new Complaint, Cox's alleged actions were not in accordance with express City policy.  Compl. ¶ 12.  Plaintiff does not allege a pattern of official countenancing of, or acquiescence to, City employees' disregard of said policy that could potentially encourage or permit Cox to flout the established policy.  Likewise, and critically, Plaintiff does not allege that the City provided no training and/or supervision for DFR employees on the disengage-and-wait-for-law-enforcement official policy and protocol.  The City can hardly be said to have been a

"moving force," therefore, when Cox purportedly abandoned the disengagement policy and allegedly assaulted Plaintiff.

Further, as noted, any alleged bad acts on Cox's part involving failure to render aid or falsification of government documents, explained *supra*, had nothing to do with assault or excessive force.  Therefore, the City was by no means on notice Cox was allegedly violent, nor did a City policymaker actively condone and ratify Cox's alleged assault on Plaintiff.

Lastly, Plaintiff alleges, and any fair reading of Plaintiff's Complaint shows, Cox's alleged bad acts were intentional.  *See*, *e.g.*, *id.* ¶ 15 ("Defendant Cox's statements caused Plaintiff to look back over his right shoulder to Cox who, without warning, provocation, or reason, kicked the right side of Plaintiff's head with his steel-toed boot.); ¶ 25 ("video footage [ …] clearly shows Defendant Cox senselessly kicking and beating Vess after he was knocked to the ground and defenseless …); ¶ 30 (Defendant Cox's assault on Plaintiff was intentional reckless, and deliberately indifferent to the welfare and safety of Plaintiff's health and life).   Courts in similar failure-to-train cases find intentional acts sever the causation cord:

> Even assuming that the City provided no training on *Brady* obligations, any lack of training in this respect cannot be said to be the "moving force" behind Bibbins' constitutional violations.  As noted *supra,* Bibbins' *Brady* claim is that the officer defendants *intentionally* failed to disclose exculpatory evidence to the prosecuting attorney . . . *With intentional conduct, such as* Brady *violations, no amount of training would stop a rogue officer from violating one's rights*.

*Bibbins v. City of Baton Rouge*, 489 F. Supp. 2d 562, 583 (M.D. La. 2007) (citations omitted) (emphasis added).  Given that the City's policy was for DFR employees to wait for law enforcement rather than engage with suspects, there is no training or oversight that could have prevented Cox's alleged "without warning, provocation, or reason" intentional attack on Plaintiff.

Plaintiff wholly fails to plead facts showing that the City's alleged deficient training or oversight program caused or even encouraged the alleged unconstitutional acts pleaded in the

Complaint.   Therefore, Plaintiff's failure-to-train and failure-to-supervise claims fail for the additional reason that Plaintiff has not alleged sufficient facts to establish "moving force" causation.

## IV.   CONCLUSION

Instructively, Justice Scalia's concurrence in *Connick* cogently reinforced the Court's

> . . . admonition that failure-to-train liability is available only in "limited circumstances," and that a pattern of constitutional violations is "ordinarily necessary to establish municipal culpability and causation."  These restrictions are indispensable because without them, "failure to train" would become a talismanic incantation producing municipal liability "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee"—which is what *Monell* rejects.  Worse, it would "engage the federal courts in an endless exercise of second-guessing municipal employee-training programs," thereby diminishing the autonomy of state and local governments.

*Connick*, 563 U.S. at 74 (Scalia, J., concurring) (quoting *Canton*, 489 U.S. at 378, 92; *Brown*, 520 U.S. at 409).

Here, Plaintiff asks this Court to second-guess the City's training and procedures based upon the alleged misconduct of one individual.  Yet, Plaintiff fails to plead facts that show or facts from which this Court can reasonably infer municipal liability based on failure-to-train or failure-to-oversee theories.  For these reasons, the City prays the Court grant its motion, dismiss with prejudice Plaintiff's claims against the City for failure to state a claim upon which relief can be granted, and award the City all such other and further relief to which the City is entitled consistent with this motion.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

Christopher J. Caso
City Attorney

*/s/ J. Cheves Ligon*
J. Cheves Ligon
Senior Assistant City Attorney
Texas State Bar No. 24070147
john.ligon@dallascityhall.com

Lindsay Wilson Gowin
Senior Assistant City Attorney
Texas State Bar No. 241114001
lindsay.gowin@dallascityhall.com

Devin Q. Alexander
Assistant City Attorney
Texas State Bar No. 24104554
devin.alexander@dallascityhall.com

7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:   214-670-3519
Facsimile:   214-670-0622

*Attorneys for Defendant City of Dallas*

## CERTIFICATE OF SERVICE

I certify that on 10/27/2021, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the CM/ECF electronic case filing system of the court.  The electronic case filing system will send a "Notice of Electronic Filing" notification to all case participants registered for electronic notice, including all *pro se* parties and/or attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*s/ J. Cheves Ligon*
J. Cheves Ligon