IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KYLE VESS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | Civil Action No. 3:21-CV-1764-D |
| CITY OF DALLAS, | § | |
| a municipal corporation,  and | § | |
| BRAD ALAN COX, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

This is an action under 42 U.S.C. § 1983 by a homeless man, Kyle Vess ("Vess"),

who was beaten by Brad Cox ("Cox"), a Dallas Fire-Rescue Department ("DFD") employee,

while Cox was responding to a grass fire.  Vess seeks relief against Cox and the City of

Dallas (the "City").  The City moves under Fed. R. Civ. P. 12(b)(6) to dismiss Vess's claim

against it for failure to plausibly plead that it adopted an unconstitutional policy or custom

that caused Vess's injuries, or that such a policy or custom was the moving force behind

those injuries.  The City has also moves for a protective order to stay discovery.  For the

reasons that follow, the court grants the City's motion to dismiss, denies its motion for stay

of discovery without prejudice as moot, and grants Vess leave to replead.

I

In August 2019 Cox and other DFD personnel were called to extinguish a grass fire.[1]
When Cox[2] and other DFD personnel arrived, Vess, who is mentally ill, was walking near
the fire.  Due to Vess's proximity to the fire, Cox thought Vess was responsible for starting
it.

Cox and other DFD personnel attempted to detain Vess.  Meanwhile, other DFD
personnel called the Dallas Police Department ("DPD") for assistance.  To detain Vess, Cox
confronted him.  Something provoked Vess, however, and he errantly swung at Cox, who
swung back at Vess and hit him.  According to the first amended complaint ("amended
complaint"), Cox then physically beat Vess "senselessly" and subdued him.  Am. Compl.
¶ 13.[3]  After Vess was subdued, Cox continued to beat him, kicking Vess six times while he
was on the ground.  It was necessary for another firefighter to restrain Cox.

_____

[1]In deciding the City's Rule 12(b)(6) motion to dismiss, the court construes the first
amended complaint ("amended complaint") in the light most favorable to Vess, accepts as
true all well-pleaded factual allegations, and draws all reasonable inferences in his favor.
*See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[2]It is unclear from the record whether Cox is a firefighter, a paramedic, or a
firefighter-paramedic.  The amended complaint alleges that he is a firefighter, *see* Am.
Compl. 1 ("Defendant Cox abused his position of public trust as a firefighter.").  But the
amended complaint also describes him as a paramedic.  *Id.* at ¶ 37(c) ("City of Dallas Fire
Department paramedics, including Defendant Cox.").  The briefing likewise refers to him
both ways.  *See* P. Resp. (ECF No. 24) at 14, 20 (describing him as a firefighter); *id.* at 10
(describing him as a paramedic).  Because the parties also use the term "firefighter
paramedic[]," suggesting that an employee can be classified as both a firefighter and
paramedic, the court will assumes *arguendo* that Cox is classified as both.  *See* Am. Compl.
¶ 38.

[3]Cox is alleged to be a trained mixed martial arts fighter.

- 2 -

According to the amended complaint, however, Cox was not finished.  DPD officers eventually arrived and found Vess lying on his back on the ground.  These officers, along with Cox and a group of other firefighters, surrounded Vess as he continued to lie on the ground.  Cox taunted Vess and told him to "[g]et up again, get up again."  Am. Compl. ¶ 14. When Vess lifted his head off the ground, Cox kicked him in the right side of his head with a steel-toed boot.  Vess was initially knocked to the ground, but then stood up in a "fight or flight" response to confront Cox.  But before Vess could do this, another officer incapacitated him with a taser.  Vess suffered "a fractured orbital socket on his face, a fractured sinus, cracked teeth, and . . . facial paralysis on the right side of his face."  *Id.* at  ¶ 17.  He also suffered an exacerbation of a prior brain injury.

According to the amended complaint, although the City knows that DFD personnel will be placed in potentially "physical encounters," it does not provide them de-escalation or use-of-force training.  Am. Compl. ¶ 12.  Rather, DFD policies require that firefighters and paramedics do not respond immediately to violent calls, but instead wait for DPD officers to arrive first, and only then respond.[4]

According to the amended complaint, the City attempted to avoid disciplining Cox for his encounter with Vess.  DFD did not conduct an internal affairs investigation, and the Dallas Public Integrity Unit ("DPIU") cleared Cox of any wrongdoing.  Both entities

---

[4]The Dallas Fire and Rescue Operating Procedures state explicitly that, if a mentally ill patient is violent, DFD personnel must call police to come assist in restraining the patient. And the procedures "make clear that no physical force training or de-escalation training is provided" to DFD personnel.  Am. Compl. 5 n.1.

"worked to ensure that no further or deeper investigation was done,"[5] because both had a practice of concealing internal disciplinary measures from the public.  Am. Compl. ¶ 24.[6] The office of the Dallas County District Attorney did not pursue an indictment of Cox; it later "indicated remorse" for not having done so; and it "admitted that a thorough investigation was not undertaken." *Id.*

Vess alleges that Cox's physical encounter with him was not an isolated incident. According to the amended complaint, Cox was arrested in 2002 for suspected assault at a birthday party; was reprimanded three times for refusing to provide medical treatment to patients; was counseled in writing in 2011 for "unacceptable conduct" related to a patient; pleaded guilty to falsifying a government report;[7] and is currently being sued in a case where he allegedly laughed at, and refused to provide care to, a homeless man, who ultimately died.

After Vess filed his complaint, the City moved to dismiss.  Vess then filed a motion for leave to file an amended complaint, which the court granted.  The court denied the City's motion to dismiss as moot.  After Vess filed his amended complaint, the City filed the instant

---

[5]Vess alleges that DPIU hampered the investigation because it did not turn over exculpatory evidence to Vess's criminal defense attorney until two years after the events in question.  Further, it did not take statements from DFD personnel when it was investigating Vess and Cox's confrontation: it only took statements from police officers who were on the scene.

[6]Vess alleges that DFD has policies in place that discourage its employees from documenting improper comments made by DFD personnel because the comments may have legal ramifications for the City or "detail an unprofessional, escalating conflict between patient and paramedic."  Am. Compl. 5 n.1 & 2.

[7]Cox was on probation for this offense when he confronted Vess.

motion to dismiss.[8]  The City also filed a motion for a protective order to stay discovery. Vess opposes both motions and, in the alternative, requests leave to amend his complaint. The court is deciding the motions on the briefs.

## II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] amended complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive the City's Rule 12(b)(6) motion to dismiss, Vess must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the

---

[8]Cox has filed answers in response to the complaint and amended complaint.

pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citation omitted).

### III

### A

A municipality is a "person" subject to suit under § 1983 under certain circumstances. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).  Although a municipality cannot be held liable simply on a theory of respondeat superior, *id.* at 691, it can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (internal quotation marks omitted) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)); *see also Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).

The first element requires that Vess adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)).  Although a "single decision by a [policymaker] may, under certain circumstances,

constitute a policy for which a [municipality] may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is the final policymaker." *Id.* (citations omitted) (second alteration in original) (internal quotation marks omitted).  A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, Vess must adequately plead the identity of a policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "A 'policymaker' must be one who takes the place of a governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)).  "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals . . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769.  "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental . . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall.*

- 7 -

*Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that Vess adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (internal quotation marks omitted) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Vess must therefore plausibly plead "that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (internal quotation marks omitted) (quoting *Brown*, 520 U.S. at 411); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Brown*, 520 U.S. at 407)). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

Alternatively, a plaintiff may assert a failure-to-train theory of municipal liability. "Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." *Byers v. Navarro Cnty.*, 2012 WL 677203, at \*16 (N.D. Tex. Mar.1, 2012) (Fitzwater, C.J.) (citations omitted); *see also*

- 8 -

*Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). "The failure to provide

proper training may fairly be said to represent a policy for which the city is responsible, and

for which the city may be held liable if it actually causes injury." *Brown v. Bryan Cnty*., 219

F.3d 450, 457 (5th Cir. 2000) (alteration omitted) (quoting *City of Canton v. Harris*, 489 U.S.

378, 390 (1989)). "In resolving the issue of a city's liability, the focus must be on adequacy

of the training program in relation to the tasks the particular officers must perform." *City of

Canton*, 489 U.S. at 390. "[W]hen a municipal entity enacts a facially valid policy but fails

to train its employees to implement it in a constitutional manner, that failure constitutes

'official policy' that can support municipal liability if it 'amounts to deliberate indifference.'"

*Littell v. Houston Indep. Sch. Dist*., 894 F.3d 616, 624 (5th Cir. 2018) (quoting *City of

Canton*, 489 U.S. at 390).

B

The City contends that Vess has failed to plausibly plead the first element of a

municipal liability claim because he has not plausibly alleged either an unconstitutional

written policy or an unconstitutional custom. The City posits that, to the contrary, Vess

alleges that Cox *broke* City policy. Moreover, the City maintains that, so far as Vess alleges

a failure-to-train theory, he has failed to plausibly plead deliberate indifference through either

"proof-by-pattern" or evidence that the risk of a constitutional violation was "so obvious."

Finally, the City contends that, even if Vess could plausibly allege an unconstitutional policy

or custom, he has failed to plausibly plead that any unconstitutional policy or custom was the

- 9 -

"moving force" behind Cox's actions.[9]

Vess responds that he has plausibly alleged a variety of policies and customs and that the City's motion to dismiss only reasonably challenges his failure-to-train theory. Vess points specifically to his allegation of the City's *de facto* policy of avoiding disciplining DFD personnel, which he posits plausibly pleads a claim for municipal liability. Regarding his failure-to-train theory, Vess maintains that the court can draw the reasonable inference that the City has a pattern of inadequate training giving rise to constitutional violations because he alleges that Cox is currently being sued for previous instances of indifference to the homeless. Alternatively, to support his failure-to-train theory under the "single-incident" exception, Vess contends that he has plausibly alleged that the City offers zero training on the use of force despite a known risk that such training is necessary for DFD personnel generally and Cox individually. Finally, Vess contends that his allegations establish that the City's policies were the "moving force" behind his injuries.

_____

[9]The City states in a footnote that it "assumes [there was] a constitutional violation" and that Vess has plausibly pleaded that any unconstitutional policy was adopted by the relevant policymaker. Mot. to Dis. (ECF No. 20) at 6 n.2. Although Vess disagrees with the City's identification of the appropriate final policymaker, given that the City does not dispute this element of a municipal liability claim, the court will assume *arguendo* that Vess has plausibly pleaded that Cox committed a constitutional violation and has plausibly pleaded the identity of a policymaker with final policymaking authority.

IV

A

Although a municipality cannot be held liable simply on a theory of respondeat superior, *Monell*, 436 U.S. at 691, it can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 579.

The first policy element "includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Pena*, 879 F.3d at 621-22 (internal quotation marks omitted) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). A plaintiff's allegations regarding the policy or custom cannot be conclusory, and they must contain specific facts showing the existence of such a custom. *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. Arlington*, 957 F.2d 1258, 1278 (5th Cir. 1992)). "A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority." *Renfro v. City of Kaufman*, 27 F.Supp.2d 715, 717 (N.D. Tex. 1998) (Fish, J.) (citing *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339-40 (5th Cir. 1989)). "'Boiler plate allegations of municipal policy, entirely lacking in any factual support that a municipal policy does exist, are insufficient.'" *Crow v. Cash Special Util. Dist.*, 2005 WL 1126826, at *2 (N.D. Tex. May 11, 2005) (Sanders, J.) (quoting *Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 736 (7th Cir. 1994)). Although Vess "need not offer proof of [his] allegations at this stage, []he still must plead facts that plausibly support each element of § 1983 municipal

liability." *Pena*, 879 F.3d at 621.

B

The court begins by identifying the City's relevant official policies or customs, as alleged by Vess.  *See Piotrowski*, 237 F.3d at 581 ("[P]olicies or customs must be disaggregated."); *Pinedo v. City of Dallas, Tex.*, 2015 WL 221085, at *3 (N.D. Tex. Jan. 15, 2015) (Fitzwater, J.) (identifying the policies the plaintiff alleged).  Vess alleges that the City has the following policies or customs:

> a. maintaining a policy of inaction and an attitude of indifference towards providing medical treatment for mentally ill persons and homeless people in order to get them off the streets;
>
> b. providing inadequate training regarding how to detain and treat mentally ill persons and homeless persons;
>
> c. inadequately supervising, training, controlling, assigning, and disciplining City of Dallas Fire Department paramedics, including Defendant Cox, who Defendant City of Dallas knew, or in the exercise of reasonable care, should have known were committing such egregious acts.  Specifically, Defendant City of Dallas had actual knowledge of Defendant Cox's careless and deliberately indifferent attitude towards indigent and homeless individuals as a result of his actions as outlined in the *Kelson* case and his own criminal and disciplinary history at the Dallas Fire Department.  Defendant City of Dallas' inadequate training, supervising, controlling, and disciplining of Defendant Cox was deliberately indifferent to the constitutional rights of others and was the moving force bearing a direct causal link to Defendant Cox's causing physical injury to Plaintiff as it was a highly predictable outcome given his history; and
>
> d. implementing a *de facto* policy and/or custom of protection for previously disciplined personnel by refusing to terminate or separate from employment individuals unfit to serve as members

- 12 -

of the Dallas Fire Department despite good cause for
termination and the risk these individuals pose to the public.

Am. Compl. ¶ 37.[10]

C

Vess has failed to allege facts that enable the court to draw the reasonable inference
that the City has a policy "of inaction and an attitude of indifference towards providing
medical treatment for mentally ill persons and homeless people in order to get them off the
streets." Am. Compl. ¶ 37(a).[11]

Vess does not appear to assert that the City has a "formal written policy or custom"
of inaction or indifference toward medical care for the homeless or mentally ill, *see Valle*,
613 F.3d at 542; rather, he appears to assert that this policy is a custom or practice "so
persistent and widespread as to practically have the force of law." *See Pena*, 879 F.3d at
621-22.

But Vess has failed to plausibly plead a custom or practice that is "persistent and
widespread." "A mere allegation that a custom or policy exists, without any factual
assertions to support such a claim, is no more than a formulaic recitation of the elements of

---

[10]Vess does not point to, and the court has not identified, any other policies or customs
alleged in the amended complaint.

[11]The court disagrees with Vess's assertion that the City only challenges his failure-to-
train theory of liability. *See* P. Resp. (ECF No. 24) at 9. The City contends in its motion to
dismiss that Vess has only pleaded conclusory statements regarding the City's alleged
policies, stating that "it is not sufficient that a plaintiff simply offer the raw assertion that
there was a custom having the force of municipal policy." Mot. to Dis. (ECF No. 20) at 7.

- 13 -

a § 1983 claim and is insufficient to state a claim for relief." *Pinedo*, 2015 WL 221085, at

*6.  Vess only alleges one isolated incident of any DFD or other City employee's displaying

inaction or indifference toward a mentally ill or homeless person.[12]  He alleges that Cox

refused to treat a homeless man.  Am. Compl. ¶ 20.[13]

This single allegation of misconduct— "in a city the size of Dallas," *Pinedo v. City

of Dallas, Tex.*, 2015 WL 5021393, at *7 (N.D. Tex. Aug. 25, 2015) (Fitzwater, J.), over the

course of what appears to be several years—is insufficient to enable the court to draw the

reasonable inference that there was a custom or practice "so persistent and widespread as to

practically have the force of law" that violated Vess's constitutional rights.  *See Pena*, 879

F.3d at 621-22.  A pattern is shown through "sufficiently numerous prior incidents" rather

than "[i]solated instances." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir.

---

[12]Vess alleges that Cox had three times previously refused patients medical care.  *See* Am. Compl. ¶ 27 ("In at least three other instances after he was hired . . . Cox was reprimanded for refusing to provide medical treatment to patients.").  But Vess does not allege that Cox refused *mentally ill* or *homeless* patients medical care.  *See id.*  Accordingly, "[a]bsent a greater level of detail," the court cannot infer from these three prior incidents that Cox refused medical care to mentally ill or homeless patients in particular.  *See Pinedo v. City of Dallas, Tex.*, 2015 WL 5021393, at *6 (N.D. Tex. Aug. 25, 2015) (Fitzwater, J.) ("Pinedo provides no facts from which the court can infer that these 15 incidents involved the use of excessive force rather than force that was reasonable under the specific circumstances.").

[13]The court assumes *arguendo* that it can consider this allegation.  In the amended complaint, Vess he does not make a *factual* allegation that this bad act occurred; rather, he notes that another person has *alleged* that Cox in fact committed this bad act.  *See* Am. Compl. ¶ 20 ("Defendant Cox is alleged to have laughed at the injured and confused homeless individual."); *see also Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 483 (5th Cir. 2021) ("The complaint thus doesn't actually make a factual allegation that the county failed to train or supervise."), *cert. denied*, 142 S. Ct. 564 (2021).

1989).  While "[t]here is no bright line rule for determining how many prior incidents are sufficient to establish a pattern of excessive force[,] [i]t is generally accepted that a single incident does not show a policy or custom, nor is a single incident sufficient to infer a policy based on customary practice."  *Moreno v. City of Dallas*, 2015 WL 3890467, at *8 (N.D. Tex. June 18, 2015) (Boyle, J.); *id.* at *9 ("In view of the size of the Dallas Police Department . . . facts suggesting an average of less than two incidents of excessive force per year over the course of five years are not sufficient to indicate a pattern of abuses."); *Rodriguez v. S. Health Partners, Inc*., 2020 WL 2928486, at *5 (N.D. Tex. June 3, 2020) (Fitzwater, J.) (holding that plaintiff did not plausibly allege a "custom" because "Rodriguez has only alleged that *she* was not permitted to go to the hospital despite her repeated requests." (emphasis in original)); *Pinedo*, 2015 WL 221085, at *6 ("Pinedo has alleged only that a single episode occurred in which Officers Robinson and Meltabarger violated Junior's constitutional rights . . . . [This] is insufficient to state a claim for relief.").

Even if the court were to consider Cox's prior indifference and inaction toward the medical needs of *all* patients (not merely mentally ill or homeless patients, *see supra* note 12), allegations (as here) of a few or multiple incidents over the course of nearly two decades of Cox's employment, within a large city fire-rescue department, are insufficient to plausibly allege a pattern.  *See Jackson v. Valdez*, 852 Fed. Appx. 129, 135-36 (5th Cir. 2021) (per curiam) ("Though it is a close call, for a Rule 12(b)(6) dismissal, we cannot conclude that allegations of two incidents of strip searches and four incidents of sex-based classifications of two transgender people in a span of five years support the reasonable inference that" these

practices are widespread.), *cert. denied*, 2022 WL 145189 (U.S. Jan. 18, 2022); *Taylor v. El Centro Coll.*, 2022 WL 102611, at *9 (N.D. Tex. Jan. 10, 2022) (Fitzwater, J.) ("[T]wo alleged incidents of discrimination do not plausibly plead a pattern so common and well-settled as to constitute a custom that fairly represents municipal policy."); *Moreno*, 2015 WL 3890467, at *9 (holding that eight instances of similar conduct did not constitute a pattern); *see also Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 852 (5th Cir. 2009) ("In sum, the 27 incidents, in the context of this record, do not suggest a pattern 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" (citation omitted)); *Pineda*, 291 F.3d at 329-31 ("Eleven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces.").[14]

Put simply, to establish a custom, Vess must demonstrate (and, at the pleading stage, must plausibly plead) "a pattern of abuses that transcends the error made in a single case," *Piotrowski*, 237 F.3d at 582 (citation omitted). Vess has not done so.[15]

---

[14]The court's conclusion is not inconsistent with its recent memorandum opinion and order in, *J.T. v. Uplift Educ*ation, 2022 WL 283022 (N.D. Tex. Jan. 31, 2022) (Fitzwater, J.), which is factually distinguishable.

[15]To demonstrate a persistent practice, a plaintiff must also show that the policy is causally related to the unconstitutional conduct at issue. *Pena*, 879 F.3d at 622 ("Because the written policy that Peña identifies is causally irrelevant, it cannot demonstrate the persistent practice she alleges."); *Martinez v. Maverick Cnty.*, 507 Fed. Appx. 446, 449 n.3 (5th Cir. 2013) (per curiam). Vess has not plausibly pleaded that a pattern of inaction or indifference toward treating certain patients is causally connected to the use of excessive force against Vess. *See Pena*, 879 F.3d at 622 ("Peña's allegations against the officers survive Rule 12(b)(6) not because she was running but because she was a non-threatening

D

Vess has also failed to allege facts allowing the court to draw the reasonable inference that the City has a "*de facto* policy of protection for previously disciplined personnel by refusing to terminate or separate from employment individuals unfit to serve as members of the Dallas Fire Department despite good cause for termination and the risk these individuals pose to the public." *Id*. at ¶ 37(d). Vess does not appear to allege the existence of an official, written policy to protect previously disciplined and unfit personnel from termination, but rather appears to plead a practice or custom.

Similar to the previous discussion, however, Vess has failed to plausibly plead that the City's refusal to fire "unfit" employees is "so persistent and widespread as to practically have the force of law."[16] *See Pena*, 879 F.3d at 621-22. Vess pleads one instance in which the City sought to protect an individual (Cox) who was potentially unfit to serve. Vess cites a newspaper headline that states that DFD did not conduct an internal affairs investigation of Cox after his confrontation with Vess, and he alleges that DPIU "quietly cleared Cox." Am. Compl. ¶ 23. Vess also asserts that the District Attorney's Office expressed remorse for not initiating an indictment of Cox and not conducting a thorough investigation. *Id.* at ¶ 24.

─────────────────────────

non-suspect. A felon in flight presents another matter entirely." (emphasis omitted)); *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) ("Our cases require that the prior acts be fairly similar to what ultimately transpired, and in the case of excessive use of force, that the prior act have involved injury to a third party.").

[16]Because the court concludes that Vess has failed to plead a policy or custom, it need not reach the question whether Vess has alleged that the policy or custom was the "moving force" behind his injuries.

Finally, Vess asserts that by, *inter alia*, interviewing only police officers (not DFD personnel) about the Cox-Vess confrontation and delaying handing over the video of the confrontation, DPIU and DFD worked to ensure that a deeper investigation was not done. *Id.* at ¶¶ 24-25.

Assuming for purposes of the City's motion to dismiss that Cox's confrontation with Vess and prior bad acts make him a person "unfit to serve as member[] of the Dallas Fire Department," Vess's allegations only plausibly support one example of the City's keeping and protecting an employee (Cox) who was unfit to serve. But as discussed above, one instance of misconduct—especially one arising from the injury to the plaintiff himself—does not amount to conduct so customary and widespread that it fairly represents municipal policy. *See Pena*, 879 F.3d at 622 n.14 ("[A] plausible claim requires more than a recitation of the incident in which the plaintiff was personally involved.") (collecting cases); *Pinedo*, 2015 WL 221085, at *6; *Moreno*, 2015 WL 3890467, at *9. Accordingly, Vess's allegations supporting this policy likewise fail to state a claim on which relief can be granted.

E

Vess's remaining allegations appear to assert policies or customs based on failure-to-train theories. Although failure to train is a separate theory of municipal liability, *see, e.g., Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 170 (5th Cir. 2010), the same standard applies both to a failure to train claim and to a municipal liability claim, *see, e.g., Valle*, 613 F.3d at 544 (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim

- 18 -

turns on a failure to train." *Connick*, 563 U.S. at 61.

To plead a plausible claim under a failure-to-train theory, Vess must allege facts that enable the court to draw the reasonable inference that "(1) the training procedures were inadequate; (2) the city's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [Vess's] injury." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (citing *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000)).

The second element, "deliberate indifference," is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing of simple or even heightened negligence will not suffice." *Valle*, 613 F.3d at 542, 547 (internal quotation marks omitted). "[T]o satisfy the second prong and prove that the municipality acted with deliberate indifference, the plaintiff must generally 'show a pattern of violations and that the inadequate training or supervision was obvious and obviously likely to result in a constitutional violation.'" *Byers*, 2012 WL 677203, at *16 n.39 (quoting *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010)) (internal quotation marks and brackets omitted).

"Deliberate indifference may be proven in one of two ways." *Jackson*, 852 Fed. Appx. at 136; *Littell*, 894 F.3d at 624 ("*Canton* envisioned two means of proving deliberate indifference."). The plaintiff may show a "pattern of similar constitutional violations," which shows that policymakers have "conscious disregard for the consequences of their action." *Connick*, 563 U.S at 62 (internal quotation marks omitted). This proof-by-pattern method

is "ordinarily necessary." *Brown*, 520 U.S. at 409.

The plaintiff may also show "that the risk of constitutional violations was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy." *Littell*, 894 F.3d at 624 (citing *Brown*, 520 U.S. at 409). "Such an inference is possible in only very narrow circumstances." *Id.* As the Supreme Court stated in *City of Canton*:

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*City of Canton*, 489 U.S. at 390 n.10 (citation omitted); *see also Pena*, 879 F.3d at 624. A need for training is so obvious when the risk occurs "in recurrent situations that a particular employee is certain to face." *City of Canton*, 489 U.S. at 396 (O'Connor, J., concurring in part, dissenting in part). This exception is generally reserved for when the employee has received *no* training at all. *Pena*, 879 F.3d at 624; *Littell*, 894 F.3d at 624 n.5. Indeed, "there is a difference between a complete failure to train[] . . . and a failure to train in one limited area." *Pena*, 879 F.3d at 624 (internal quotation marks omitted) (emphasis omitted).

i

Vess's first failure-to-train theory—that the City is "providing inadequate training regarding how to detain and treat mentally ill persons and homeless persons," Am. Compl.,

¶ 37(b)—fails because Vess has not plausibly pleaded the second element of his failure-to-train theory: deliberate indifference.[17]  *See Byers*, 2012 WL 677203, at *16 n.39.  Vess alleges that the City knows its DFD personnel may get into potential physical encounters, but it provides no training on unreasonable use of force or de-escalation.  *Id.* at ¶ 12.  He also asserts that the DFD has promulgated policies related to use-of-force by paramedics and firefighters, which suggests that the City knows DFD personnel face potentially physical encounters.  Vess asserts that DFD has a policy that requires its personnel to delay their response to violent calls and wait for police to arrive.  *Id.*  And he alleges that DFD has a policy that requires paramedics to request the presence of a police officer if a mentally ill patient becomes violent.  *Id.* at 5 n.2.

Assuming *arguendo* that Vess can define a failure-to-train policy broadly—incorporating dissimilar constitutional violations[18]—he only alleges two prior incidents where a DFD employee (here, both times Cox) allegedly "detain[ed] or treat[ed]" a mentally ill or homeless person.  Am. Compl. ¶¶ 18, 20.

And the court cannot consider one of these incidents—which is the alleged use of

---

[17]The court does not reach the first element (whether Vess has plausibly pleaded that the training was inadequate), or the third element (whether the failure to train was the moving force behind Vess's injuries) of this failure-to-train theory.

[18]The Fifth Circuit emphasizes that a plaintiff must show a pattern of *similar* constitutional violations to establish deliberate indifference.  *See, e.g., Jason v. Tanner*, 938 F.3d 191, 198 (5th Cir. 2019) ("[F]our cleaning-tool incidents don't create a pattern of violation that should've put the prison on notice for a sling-blade incident."); *Davis*, 406 F.3d at 383-84 ("[A] habit of displaying a firearm during traffic stops does not constitute a relevant pattern with respect to using deadly force during a traffic stop.").

excessive force against Vess in this case, *id.* at ¶ 18—because the court can only consider *prior* incidents that evidence an obvious pattern and that put the City on notice of a problem with its training. *See Pena*, 879 F.3d at 622 n.14 ("[A] plausible claim requires more than a recitation of the incident in which the plaintiff was personally involved."); *Valle*, 613 F.3d at 548 ("[E]ven assuming that these later shootings involved excessive force, they are not sufficient to show that the City was on notice of similar constitutional violations *before* Esparza was killed." (emphasis in original)); *see also Connick*, 563 U.S. at 62 n.7 ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates . . .'" (alteration in original) (quoting *City of Canton*, 489 U.S. at 395)).

The remaining allegation—that Cox failed to render aid to a homeless man, Am. Compl. ¶ 20—is alone insufficient. "[A] single prior instance would not establish a pattern." *Livezey v. The City of Malakoff*, 657 Fed. Appx. 274, 278 (5th Cir. 2016) (per curiam); *Davis*, 406 F.3d at 382-83 ("We have stressed that a single incident is usually insufficient to demonstrate deliberate indifference."); *Ayon v. Austin Indep. Sch. Dist.*, 2020 WL 1536383, at *7 (W.D. Tex. Mar. 31, 2020) ("[O]ne prior incident of sexual assault—while indisputably egregious—is not enough to establish a pattern under current Fifth Circuit law." (citing *Peterson*, 588 F.3d at 850)); *Owens v. City of Fort Lauderdale*, 174 F.Supp.2d 1298, 1312 (S.D. Fla. 2001) ("[I]t is the rare instance that only one previous incident will be sufficient to place a municipality on notice of 'widespread abuse' constituting deliberate indifference.") (collecting cases).

Finally, even if the court *could* consider Cox's excessive force against Vess in this case (and Cox's previous refusals to render aid to people, *supra* note 12), Vess has still failed to plausible plead deliberate indifference. *Jackson*, 852 Fed. Appx. at 136-37 ("[I]t cannot be said that Jackson sufficiently pleaded facts that Dallas County employees conducted strip searches and classified transgender detainees solely on the basis of biological sex 'so often' as to give rise to a pattern."); *Jason*, 938 F.3d at 198 ("[T]hree yard fights with brooms and one with a mop just aren't enough to constitute a pattern."). Without such a pattern, "decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S at 62. Accordingly, the court cannot draw the reasonable inference from Vess's allegations that the City was deliberately indifferent in its failure to train its employees in "how to detain and treat mentally ill persons and homeless persons." Am. Compl. ¶ 37(b)

ii

Vess's second failure-to-train theory is that the City "inadequately supervis[ed], train[ed], controll[ed], assign[ed], and disciplin[ed] City of Dallas Fire Department paramedics, including Defendant Cox, who Defendant City of Dallas knew, or in the exercise of reasonable care, should have known were committing such egregious acts." Am. Compl. ¶ 37(c). And the theory posits that, given Cox's disciplinary history, "[the beating] was a highly predictable outcome given his history." *Id.*

This theory fails to plausibly allege the first and second elements of a failure-to-train theory. The court construes the amended complaint to allege a failure to train theory based

- 23 -

on the "single-incident" liability the court hypothesized in *City of Canton*. *See Littell*, 894 F.3d at 624. And the court construes it as alleging that the City failed to train Cox as an individual and to train DFD personnel generally.

Vess has failed to plausibly plead the first element of his failure-to-train theory. Vess does not allege *how* the City's training is inadequate. He only pleads that "inadequately supervis[ed], train[ed], controll[ed], assign[ed], and disciplin[ed] City of Dallas Fire Department paramedics, including Defendant Cox." Am. Compl. ¶ 37(c). But he has not specified in what way the training was insufficient, which is fatal to his claim: "[a] plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005); *see Anokwuru v. City of Houston*, 990 F.3d 956, 965 (5th Cir. 2021) (holding that plaintiff's failure-to-train theory failed when he "baldly allege[d] that the City failed to train Officer Francis."); *Dobbins v. City of Dallas*, 2021 WL 4395817, at *7 (N.D. Tex. June 24, 2021) (Horan, J.) ("They allege that the City's training procedures are inadequate but fail to allege how those procedures are inadequate."), *rec. adopted*, 2021 WL 3781927 (N.D. Tex. Aug. 25, 2021) (Kinkeade, J.); *Doe on behalf of M.F. v. Harris Cnty. Precinct Six Constable Sylvia Trevino*, 452 F.Supp.3d 548, 558 (S.D. Tex. 2020).

Furthermore, Vess has failed to plausibly plead the second element of his failure-to-train theory. To state a deliberate indifference claim via the single-incident exception, Vess must plausibly plead that paramedics and firefighters (and Cox) face "usual and recurring situations" risking that the unconstitutional conduct (here, excessive force) may occur. *City*

- 24 -

*of Canton*, 489 U.S. at 390 n.10, 391 (holding that police officers faced recurring situation of risk of unconstitutional conduct in "arrest[ing] fleeing felons." ); *Littell*, 894 F.3d at 627 (holding that school officials faced recurring situation of risking conducting unconstitutional searches on students because "at least some of those employees are regularly called upon to conduct such searches."); *see also Drake v. City of Haltom City*, 106 Fed. Appx. 897, 900 (5th Cir. 2004) (per curiam) ("We are unwilling to say, at this point [on a motion to dismiss], that it is not obvious that male jailers who receive no training and who are left virtually unsupervised might abuse female detainees.").[19]   A plaintiff has not plausibly pleaded deliberate indifference under the single-incident exception when there are no allegations that support the reasonable inference that an official faced a recurring situation where constitutional violations might occur.  *See Garza v. City of Donna*, 922 F.3d 626, 638 (5th Cir. 2019); *Ayola*, 2020 WL 1536383, at *7 n.4 (holding that plaintiff failed to allege that bus drivers faced recurring situation risking sexually abusing minors); *Harris, next friend of Doe v. Parker*, 512 F.Supp.3d 714, 726 (S.D. Miss. 2021) (holding that plaintiff failed to

---

[19]The single-incident exception "is generally reserved for those cases in which the government actor was provided no training whatsoever."  *Pena*, 879 F.3d at 624.  One court has noted that paramedics do receive training on how to handle violent patients.  *See Benedict v. Borough of Malvern*, 2017 WL 1632813, at *5 n.2 (E.D. Pa. May 1, 2017) (describing paramedic licensure requirements and concluding that inadequate "training on treating potentially violent patients does not lead to the 'obvious consequence' of a constitutional violation such as what occurred in this case"); *see Connick*, 563 U.S. at 66 (holding that "[i]n light of this regime of legal training and professional responsibility, recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training about how to obey the law.").

plausibly allege that guidance counselor faced recurring situation risking sexually abusing minors).

The court concludes that Vess has not plausibly pleaded that paramedics and firefighters (or Cox, himself) faced recurring situations where they needed to use excessive force against patients.  In *Littell* the court faced the question whether the probability of strip searches of students by school officials was so high that the failure to train them in the constitutionality of doing so was unconstitutional.  *See Littell*, 894 F.3d at 619-20, 625.  The court concluded that the school district knew with a "high degree of certainty" that school officials were likely to be placed in a "recurrent situation" of having to conduct searches and that this was a "usual and recurring" task that they performed.  *Id.* at 626 (quoting *City of Canton*, 489 U.S. at 390-91, 396).  The court reasoned that the school district directly vested authority in the officials to conduct the searches and notified students they may be searched. *Id.* The searching official in *Littell* likewise had been asked specifically to conduct the search by the school district, and a disciplinary memorandum after the search suggested the official would conduct more searches in the future.  *Id.*

The facts in *Littell* contrast starkly with those of this case.  Vess makes the conclusory assertion that paramedics and firefighters face recurring situations where use of force is necessary and that the City knows it.  *See* Am. Compl. ¶ 12.  But the only support for this assertion is one alleged incident in an article that Vess cites, which describes DFD personnel disarming an attacker, *id.*, and DFD policies that require DFD personnel to call police for help if a mentally ill patient becomes violent or if they receive a violence-related call.  *Id.* at

- 26 -

5 n.2.

But these allegations are insufficient.  In *Littell* the plaintiff alleged that school officials were given authority to search students.  *Littell*, 894 F.3d at 626.  And the plaintiff alleged that the school official was told to search, and the school suggested more searches were to be done in the future—suggesting that the school district knew that these searches were a part of the school officials' duties and a recurring situation.  *See id.*  Vess, on the other hand, has not alleged that paramedics or firefighters have authority to use force—in fact, he cites standard operating procedures that explicitly prohibit DFD personnel from doing so. *See* Am. Compl. 5 n.2.  Nor has he alleged similar facts to those of *Littell*, such as a suggestion that Cox and others are told to use force to restrain individuals.  While DFD policy requiring personnel to avoid violent situations may suggest that the City knew its paramedics and firefighters may face such situations, this policy alone does not raise the reasonable inference that "at least some of those employees are regularly called upon to conduct such searches."  *Littell*, 894 F.3d at 627.  Rather, it more likely permits the court to draw the reasonable inference that the City was aware of such a possibility and that this was "an issue on the City's radar."  *Valle*, 613 F.3d at 550.  But this does not permit the court to draw the reasonable inference that the use of excessive force by DFD personnel was a "highly predictable consequence" of failing to train DFD personnel in using force.  *Id.*[20]

---

[20]Vess points to Cox's personal disciplinary history to support his claim that the need for training on excessive force was obvious to the City.  The Fifth Circuit has noted that character traits are probative to determining whether a lack of training was "so obvious," *Valle*, 613 F.3d at 549, but Cox's prior bad acts (relating to failing to render aid) only

- 27 -

Accordingly, the court grants the City's motion to dismiss for failure to state a claim on which relief can be granted.

V

Although the court is granting the City's motion to dismiss, it will permit Vess to replead:

> [i]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (alteration in original) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  It is not clear that all of the defects in the amended complaint are incurable, and Vess has not advised the court that he is unwilling or unable to amend in a manner that will avoid dismissal.  Accordingly, the court grants Vess 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

---

remotely suggest an inclination to use excessive force.  And, regardless, the court holds Vess has failed to plead deliberate indifference as to Cox individually, even given his disciplinary history.  *Davis*, 406 F.3d at 383-86 (holding that even though officer had vulgar behavior, crudity, lack of judgment, and "aggressive" nature, it was not so obvious he would shoot and kill an individual with excessive force); *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998) (holding that evidence officer was "dangerously" stressed did not make it so obvious that he would shoot someone).

VI

The court denies without prejudice the City's motion for a protective order to stay

discovery under Rule 26(c).  Rule 26(c) provides, in pertinent part: "The court may, for good

cause, issue an order to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense[.]"  "Rule 26(c)'s requirement of a showing of good

cause to support the issuance of a protective order indicates that '[t]he burden is upon the

movant to show the necessity of its issuance, which contemplates a particular and specific

demonstration of fact as distinguished from stereotyped and conclusory statements.'"  *In re*

*Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (per curiam) (quoting *United States v.*

*Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

The parties previously made a joint scheduling proposal in which they requested that

discovery be limited to Cox's qualified immunity defense.  The court's scheduling order,

however, does not contain any limits on discovery.  The City has now filed a motion that

(although somewhat unclear) seeks to limit discovery to Cox's qualified immunity defense.

The City asks for a stay of discovery "pending resolution of its potentially dispositive

motion under Rule 12(b)(6)."[21] D. Reply (ECF No. 28) at 6.  The court therefore denies the

---

[21]The City's motion originally stated that it was seeking a stay of discovery until "after
[the court] resolves the City's Rule 12(b) motion to dismiss and Cox's qualified immunity
defense."  Mot. to Stay (ECF No. 25) at 6.  But in its reply, it states repeatedly that it is filing
this motion for a protective order "pending resolution of its Motion to Dismiss."  D. Reply
(ECF No. 28) at 2.  Because no party asks the court to decide Cox's qualified immunity
defense, and the City has dropped its request to stay discovery pending the resolution of the
issue of qualified immunity, the court construes the City's request as stated in its reply:
requesting a stay pending its motion to dismiss.

City's motion as moot "because the court has decided today the motion[] to dismiss." *Taylor*, 2022 WL 102611, at *15.

*   *   *

Accordingly, for the reasons explained, the court grants the City's motion to dismiss, denies the City's motion for a protective order without prejudice as moot, and grants Vess leave to amend.

**SO ORDERED**.

March 3, 2022.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 30 -