IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KYLE VESS,                                §
                                          §
                   Plaintiff,             §
                                          §
VS.                                       §
                                          §        Civil Action No. 3:21-CV-1764-D
CITY OF DALLAS,                           §
a municipal corporation, and              §
BRAD ALAN COX,                            §
                                          §
                   Defendants.            §

MEMORANDUM OPINION
AND ORDER

        This is an action by plaintiff Kyle Vess ("Vess"), a homeless man, seeking relief

under 42 U.S.C. § 1983 against defendants Brad Cox ("Cox"), a Dallas Fire-Rescue

Department ("DFD") employee, and the City of Dallas (the "City") for a beating

administered to him by Cox, who was responding to a grass fire. The City moves under Fed.

R. Civ. P. 12(b)(6) to dismiss for failure to state a claim on which relief can be granted, and

Cox moves under Rule 12(c) for judgment on the pleadings. Vess opposes both motions,

and, in the alternative, requests leave to amend. For the reasons that follow, the court grants

Cox's motion in part and denies it in part, denies the City's motion, and denies Vess's

alternate request for leave to amend.

I

In August 2019 Cox and other DFD personnel were called to extinguish a grass fire.[1]

When Cox[2] and other DFD personnel arrived, Vess, who is mentally ill, was walking near

the fire.  Due to Vess's proximity to the fire, Cox thought Vess was responsible for starting

it.

 Cox and other DFD personnel attempted to detain Vess.  Meanwhile, other DFD

personnel called the Dallas Police Department ("DPD") for assistance.  Cox confronted Vess

in an effort to detain him.  Something provoked Vess, however, and he errantly swung at

Cox, who swung back at Vess and hit him.  According to the second amended complaint

("SAC"), Cox then beat Vess "senselessly" and subdued him.  SAC ¶ 13.[3]  After subduing

Vess, Cox continued to beat him, kicking him six times while he was on the ground.  It was

necessary for another firefighter to restrain Cox.

But according to the SAC, Cox was not finished.  DPD officers eventually arrived and

found Vess lying on the ground on his back, "clearly subdued."  SAC ¶ 13.  The DPD

_____

[1]In deciding the City's Rule 12(b)(6) motion to dismiss and Cox's Rule 12(c) motion, the court construes Vess's second amended complaint ("SAC") in the light most favorable to Vess, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor.  *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[2]As the court noted in its prior memorandum opinion and order, *Vess v. City of Dallas* (*Vess I*), 2022 WL 625080, at *1 n.2 (N.D. Tex. Mar. 3, 2022), it is unclear from the SAC whether Cox is a firefighter, a paramedic, or a firefighter-paramedic.  For the purposes of this motion, the court assumes *arguendo* that Cox is a firefighter-paramedic.  *See id.*

[3]Cox is alleged to be a trained mixed martial arts fighter.

- 2 -

officers, together with Cox and a group of other firefighters, surrounded Vess as he continued to lie on the ground.  Cox taunted Vess, telling him to "[g]et up again, get up again."  *Id.* ¶ 14.  When Vess lifted his head off the ground, Cox kicked him in the right side of his head with a steel-toed boot.  Vess was initially knocked to the ground, but then stood up in a "fight or flight" response to confront Cox.  Before Vess could confront Cox, however, another officer used a taser to incapacitate Vess.  Cox's actions caused Vess to suffer "a fractured orbital socket on his face, a fractured sinus, cracked teeth, and . . . facial paralysis on the right side of his face."  *Id.* ¶ 17.  Vess also suffered an exacerbation of a prior brain injury.

According to the SAC, although the City knew that DFD personnel would be placed in potentially "physical  encounters," it did not provide them de-escalation or use-of-force training.  *Id.* ¶ 12.  Rather, DFD policies require that firefighters and paramedics do not respond immediately to violent calls, but instead wait for DPD officers to arrive, and only then respond.[4]

The City attempted to avoid disciplining Cox for his encounter with Vess.  DFD did not conduct an internal affairs investigation, and the Dallas Public Integrity Unit ("DPIU") cleared Cox of any wrongdoing.  Both entities "worked to ensure that no further or deeper

---

[4]The Dallas Fire and Rescue Operating Procedures state explicitly that, if a mentally ill patient is violent, DFD personnel must summon police to assist in restraining the patient. And the procedures "make clear that no physical force training or de-escalation training is provided" to DFD personnel.  SAC at 5 n.1.

investigation was done"[5] because both had a practice of concealing internal disciplinary measures from the public. SAC ¶ 24.[6] The office of the Dallas County District Attorney did not pursue an indictment of Cox, later "indicated remorse" for not having done so, and "admitted that a thorough investigation was not undertaken." *Id.*

Vess alleges that Cox's physical encounter with him was not an isolated incident. According to the SAC, Cox was arrested in 2002 for suspected assault at a birthday party; was reprimanded three times for refusing to provide medical treatment to patients; was counseled in writing in 2011 for "unacceptable conduct" related to a patient; pleaded guilty to falsifying a government report;[7] and is currently being sued in a case where he allegedly laughed at, and refused to give care to, a homeless man, who ultimately died.

Finally, according to the SAC, Cox's actions were consistent with the City's practices. Vess alleges that the DFD treats fire rescue calls to affluent areas of Dallas differently from those to impoverished communities. DFD and DPD personnel do not find it necessary to adequately respond to these communities and believe they can get away with certain

---

[5]Vess alleges that DPIU hampered the investigation because it did not turn over exculpatory evidence to Vess's criminal defense attorney until two years after the events in question and not until after this lawsuit was filed. Further, DPIU did not take statements from DFD personnel when it was investigating Vess and Cox's confrontation; it only took statements from police officers who were on the scene.

[6]Vess alleges that DFD has policies in place that discourage its employees from documenting improper comments made by DFD personnel because the comments may lead to legal ramifications for the City or "detail an unprofessional, escalating conflict between patient and paramedic." SAC at 5 n.1 & 2.

[7]Cox was on probation for this offense when he confronted Vess.

substandard behavior in them.  And when DFD personnel do engage in inappropriate behavior (whether in poor communities or elsewhere), DFD has refused to terminate any of these personnel in the last 30 to 40 years.  This is so despite numerous examples of such inappropriate behavior—not punished by termination—including refusing to render care because of the person's sexual orientation; refusing to transport a child to the hospital because the paramedic thought the mother was lying about the seriousness of her child's illness; refusing to treat a man with a terminal condition because the paramedic believed the man was already dead; and refusing to follow standard procedures for a gunshot wound.[8]

After Vess filed his complaint, the City moved to dismiss.  After Vess filed his amended complaint, the City filed another motion to dismiss, which the court granted.[9]  The City now moves for dismiss Vess's SAC under Rule 12(b)(6) for failure to state a claim on which relief can be granted, and Cox moves under Rule 12(c) for judgment on the pleadings. Vess opposes both motions, and, in the alternative, requests leave to amend his SAC.[10]  The court is deciding the motions on the briefs.

---

[8]These examples are "[a]ccording to a 29-year veteran of the Dallas Fire Department." SAC ¶ 33.

[9]Cox filed answers in response to the complaint, amended complaint, and SAC.

[10]Vess requests leave to amend only in his response to Cox's motion, but not in his response to the City's motion.  The court grants Cox's motion in part below, *see infra* § III(C).  It denies Vess's alternative request for leave to amend, however, based on its determination that amendment of his Fourteenth Amendment claim (which does not apply here) would be futile.  *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000) ("[I]t is within the district court's discretion to deny a motion to amend if it is futile.").

II

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion." (citation omitted) (internal quotation marks omitted)).

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a motions to dismiss, Vess must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

- 6 -

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

## III

The court considers first whether Cox is entitled to judgment on the pleadings dismissing Vess's  Fourth Amendment and Fourteenth Amendment excessive force claims brought under § 1983 based on qualified immunity.

### A

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).[11]  Qualified immunity applies to state officials, as here, sued for constitutional violations under § 1983.  *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999).  "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Cozzo v. Tangipahoa Parish Council—President Gov't,* 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475

---

[11]A government official must affirmatively plead qualified immunity, *Gomez v. Toledo*, 446 U.S. 635, 640 (1980), which Cox did.

U.S. 335, 341 (1986)).

To decide whether Cox is entitled to qualified immunity, the court performs a two-pronged analysis.[12]  *Mitchell v. Mills*, 895 F.3d 365, 369 (5th Cir. 2018).  It begins with the question whether, taken in the light most favorable to plaintiff as the party asserting the injury, the facts he has alleged show that the defendant's conduct violated a constitutional right.  *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.); *see Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." (citations omitted)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Id.*  "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable."  *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).[13]

---

[12]The court may decide a case on either prong.  *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[13]Cox does not properly challenge the second prong of the qualified immunity analysis (i.e., whether his actions were objectively unreasonable).  Cox belatedly raises an argument regarding the second prong of qualified immunity in his reply, which the court declines to consider.  *See, e.g.*, *Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief." (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.))), *aff'd*, 277 Fed. Appx. 483 (5th Cir.

"The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).

Clearly established rights must not be defined at a high level of generality. *See Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (per curiam). "For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause . . . violates a clearly established right." *Anderson*, 483 U.S. at 639. But because defining clearly established rights so broadly would "destroy" the balance struck by the qualified immunity doctrine, rights must instead be defined in a "more particularized" sense. *Id.* at 639-40. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau*, 543 U.S. at 199 (quoting *Saucier*, 533 U.S. at 202). Although this does "not require a case

---

2008). The court will therefore assume *arguendo* that Vess has plausibly pleaded that Cox's actions were objectively unreasonable. *See Kelson v. Clark*, 1 F.4th 411, 421 (5th Cir. 2021) (stating that certain issues were undisputed); *Pinedo v. City of Dallas*, 2016 WL 147893, at *5 (N.D. Tex. Jan. 13, 2016) (Fitzwater, J.) (assuming conceded elements of Fourth Amendment claim).

directly on point," it does require the plaintiff to show that "the violative nature of the particular conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis omitted) (quoting *Ashcroft*, 563 U.S. at 741-42). "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, [such as] excessive force, will apply to the factual situation the officer confronts.'" *Id.* (second alteration in original) (quoting *Saucier*, 533 U.S. at 205). In essence, the plaintiff must "identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment." *White v. Pauly*, 580 U.S. 73, 77 (2017) (per curiam).

## B

Cox contends that he is entitled to judgment on the pleadings dismissing Vess's Fourth Amendment excessive force claim based on qualified immunity because Vess was never seized.[14] According to Cox, this is because, just before Cox kicked Vess, Vess was not under arrest or otherwise told that he could not leave, and in the screenshot in the SAC that depicts the kick, the officers standing around Vess are far away from him.

Vess responds that he was "seized," and that the Fourth Amendment applies, because

---

[14]Cox makes clear in his motion that he does not challenge the elements of an excessive force claim for the purposes of this motion, but only contests whether Vess can assert a Fourth Amendment claim *at all* because, Cox contends, Vess was not seized when Cox allegedly beat him. Accordingly, the court assumes the elements of Vess's excessive force claim. *See supra* note 13.

- 10 -

Cox and other officers used physical force and a show of authority to detain him.  Vess points out that he has pleaded that Cox and the other officers were standing around him and had "custodial detention" of him just before Cox kicked him, and he posits that his Fourteenth Amendment claim should survive because such a claim is not confined to "pretrial detainees."  According to Vess, "the Fourteenth Amendment is applicable to excessive force claims *outside the context of a seizure*."  P. Resp. (ECF No. 44) at 13 (emphasis in original).[15]

The Fourth Amendment protects the right of the people against unreasonable seizures. *Torres v. Madrid*, ___ U.S. ___, 141 S. Ct. 989, 995 (2021).  "To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that []he was seized." *Flores v. Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).  A seizure occurs when "under the totality of the circumstances, a reasonable person would have thought he was not free to leave."  *Keller v. Fleming*, 952 F.3d 216, 222 (5th Cir. 2020).  An officer conducts a seizure when he uses physical force *or* a show of authority in some way to restrain the liberty of a person.  *See Torres*, 141 S. Ct. at 995, 998; *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *Kelson v. Clark*, 1 F.4th 411, 417-18 (5th Cir. 2021); *Flores*, 381 F.3d at 396; *see also McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017) ("Physical force is not required to effect a seizure; *however, absent physical force*, 'submission to the assertion of authority' is necessary." (emphasis added) (quotation omitted)).

_____

[15]Vess also maintains that he has plausibly pleaded that Cox acted with deliberate indifference.

In *Flores*, for example, an officer shot and struck the plaintiff's ("Flores'") car (but not Flores). *Flores*, 381 F.3d at 396. The officer argued that Flores was not seized because she was escaping, not "seized," when the officer shot his gun, and Flores did not submit to the officer's show of authority. *Id.* The Fifth Circuit declined to accept this argument. It reasoned that the officer had in fact seized Flores simply by "us[ing] physical force by shooting Flores'[] car, and the termination of her freedom of movement was accomplished by exactly the means he intentionally applied, i.e., the shot to her car." *Id.* In other words, Flores was seized the moment the officer used force (i.e., discharged his weapon into her car) with the intent to restrain Flores' movement.

Here, Vess plausibly pleads that Cox used force against him by kicking him in the head. And the court can draw the reasonable inference from the pleaded facts that Cox used this force with the intent to detain Vess (i.e., to restrain his liberty). The SAC explicitly alleges that Cox confronted, beat, and subdued Vess "to detain him." SAC ¶ 11.[16] The allegations of the SAC that describe Cox's use of force to restrain Vess's liberty of

---

[16]The SAC does not specify why Cox *continued* to beat Vess after he was subdued (including the kick to his head). It only asserts that Cox's initial confrontation was for the purpose of detaining him. But considering that the SAC plausibly pleads that Cox's initial physical force was used to detain Vess, that the later kick only occurred after Vess lifted his head off the ground, and the court's obligation to view the facts in the light most favorable to Vess, the court concludes that the SAC plausibly alleges that the kick "objectively manifest[ed] an intent to restrain." *Torres*, 141 S.Ct. at 998; *cf. Vardeman v. City of Houston*, 2022 WL 267591, at *4 (S.D. Tex. Jan. 28, 2022) (Rosenthal, C.J.) (holding that official who punched slow-moving driver only wanted driver to "move along").

movement are sufficient to plausibly plead that Cox seized Vess when he kicked him.[17]

C

Because Vess plausibly has plausibly pleaded that he was seized under the Fourth Amendment, *see supra* § III(B), the Fourteenth Amendment does not apply. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[We] hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment . . . . [N]ot the more generalized notion of 'substantive due process' . . . ."); *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 278 (5th Cir. 2015) ("While substantive due process applies to some police conduct, the Supreme Court has refused to look beyond the Fourth Amendment when the police 'seize' a suspect."). Accordingly, to the extent Vess alleges a claim against Cox based on the Fourteenth Amendment, that claim is dismissed.[18]

---

[17]It does not matter that Cox's kick did not stop Vess's movement or that Vess got up after the kick. *See Torres*, 141 S. Ct. at 995, 998-99 ("[T]he officers seized Torres for the instant that the bullets struck her.").

[18]Cox also posits that Vess's Fourteenth Amendment claim fails because he was not a pretrial detainee, and even if he was, he has failed to plausibly plead deliberate indifference. The court need not consider these assertions.

IV

The court now turns to the City's Rule 12(b)(6) motion to dismiss.

A

1

Under certain circumstances, a municipality is a "person" subject to suit under § 1983. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).  Although a municipality cannot be held liable simply on a theory of *respondeat superior*, *id.* at 691, it can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)); *see also Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).

The first element requires that Vess adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)).  Although a "single decision by a [policymaker] may, under certain circumstances, constitute a policy for which a [municipality] may be liable[,] . . . this 'single incident

- 14 -

exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is the final policymaker." *Id.* (citations omitted) (second alteration in original) (some internal quotation marks omitted).  A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, Vess must adequately plead the identity of a policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "A 'policymaker' must be one who takes the place of a governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)).  "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals . . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769.  "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental[.] . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final

policymaking authority and mere decisionmaking).

The third element requires that Vess adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Vess must therefore plausibly plead "that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Brown*, 520 U.S. at 407)). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

2

A plaintiff may also assert a failure-to-train theory of municipal liability. "Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." *Byers v. Navarro Cnty.*, 2012 WL 677203, at *16 (N.D. Tex. Mar. 1, 2012) (Fitzwater, C.J.) (citations omitted); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). "The failure to provide proper training

- 16 -

may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390. "[W]hen a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that failure constitutes 'official policy' that can support municipal liability if it "amounts to deliberate indifference." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018).

## B

The City contends that Vess has alleged two policies or customs but has not pleaded a pattern of incidents constituting a widespread practice to support those policies or customs;[19] that the incidents Vess does allege do not bear any resemblance to his excessive force claim, and even if the court considered unrelated incidents, Vess would have pleaded only five incidents, which is insufficient to form a pattern;[20] that Vess's allegations in support

---

[19]The City also emphasizes that Cox's actions were inconsistent with its explicit policies.

[20]The City challenges whether Vess's references to the claims of a "29-year veteran and officer of the Dallas Fire Department" constitute "facts" that this court can consider on its motion to dismiss. The court noted in *Vess I* that, at one point in his complaint, Vess had pointed to an *allegation*—contained in a separate complaint—that Cox had done a bad act. Vess did not allege the allegation as a fact. *Vess I*, 2022 WL 625080, at *6 n.13. Vess appears to have corrected this in the SAC.

The court disagrees with the City and concludes that Vess is alleging the "29-year

of his alternate failure-to-train theories fail because Vess has failed to plead how the training was inadequate, appears to seek *better* training, and fails to show deliberate indifference; that Vess does not meet the single-incident exception to show deliberate indifference because he has not alleged any new facts beyond what he alleged in his prior, dismissed complaint; and that Vess has not shown how the City's policies were the moving force behind Cox's actions.

Vess responds that he has plausibly pleaded that the City's customs and policies of protecting bad apples were the moving force behind Vess's injuries. Vess points to allegations about an expert who stated that there is an implied code of silence and, despite mistreatment of patients, there has been no termination of paramedics in nearly 40 years; Vess asserts that this policy was the moving force behind his injuries; and he maintains that he has plausibly alleged that the City lacked training for paramedics on use of force, that the City was deliberately indifferent to the risk of a constitutional violation, and that the lack of training was a moving force behind Cox's actions.

## C

Although, as previously noted, a municipality cannot be held liable simply on a theory of *respondeat superior*, *Monell*, 436 U.S. at 691, it can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 579.

---

veteran's" claims as fact, which the court can consider, not simply asserting them as *allegations*.

- 18 -

The first policy element "includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Pena*, 879 F.3d at 621 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted)).   A plaintiff's allegations regarding the policy or custom cannot be conclusory, and they must contain specific facts showing the existence of such a custom.  *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. Arlington*, 957 F.2d 1258, 1278 (5th Cir. 1992)).   "A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority." *Renfro v. City of Kaufman*, 27 F.Supp.2d 715, 717 (N.D. Tex. 1998) (Fish, J.) (citing *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339-40 (5th Cir. 1989)).   "'Boiler plate allegations of municipal policy, entirely lacking in any factual support that a municipal policy does exist, are insufficient.'" *Crow v. Cash Special Util. Dist.*, 2005 WL 1126826, at *2 (N.D. Tex. May 11, 2005) (Sanders, J.) (quoting *Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 736 (7th Cir.1994)).   Although Vess "need not offer proof of [his] allegations at this stage, []he still must plead facts that plausibly support each element of § 1983 municipal liability." *Pena*, 879 F.3d at 621.

## D

As in *Vess I*, the court begins by identifying the City's relevant official policies or customs, as alleged by Vess.  *See Piotrowski*, 237 F.3d at 581 ("[P]olicies or customs must be disaggregated . . . ."); *Pinedo v. City of Dallas, Tex.*, 2015 WL 221085, at *3 (N.D. Tex.

Jan. 15, 2015) (Fitzwater, J.) (identifying the policies the plaintiff alleged). Vess alleges that

the City has the following policies or customs:

> a. maintaining a policy of inaction and an attitude of indifference towards providing medical treatment for mentally ill persons and homeless people in order to get them off the streets . . . . ;

> b. providing inadequate training regarding how to detain and treat mentally ill persons and homeless persons . . . . ;

> c. inadequately supervising, training, controlling, assigning, and disciplining City of Dallas Fire Department paramedics, including Defendant Cox, who Defendant City of Dallas knew, or in the exercise of reasonable care, should have known were committing such egregious acts. Specifically, Defendant City of Dallas had actual knowledge of Defendant Cox's careless and deliberately indifferent attitude towards indigent and homeless individuals as a result of his actions as outlined in the *Kelson* case and his own criminal and disciplinary history at the Dallas Fire Department. Defendant City of Dallas' inadequate training, supervising, controlling, and disciplining of Defendant Cox was deliberately indifferent to the constitutional rights of others and was the moving force bearing a direct causal link to Defendant Cox's causing physical injury to Plaintiff as it was a highly predictable outcome given his history; [and]

> d. implementing a *de facto* policy and/or custom of protection for previously disciplined personnel by refusing to terminate or separate from employment individuals unfit to serve as members of the Dallas Fire Department despite good cause for termination and the risk these individuals pose to the public . . . .

SAC ¶ 45.[21]

---

[21]Vess does not point to, and the court has not identified, any other policies or customs alleged in the SAC. These policies and customs are identical to the ones alleged in the previous complaint. The court also notes that, although the City has challenged all of these

E

As in Vess's prior complaint, he has failed to plead facts that enable the court to draw the reasonable inference that the City has a policy "of inaction and an attitude of indifference towards providing medical treatment for mentally ill persons and homeless people in order to get them off the streets."  SAC ¶ 45(a).

Vess does not appear to allege that the City has a "formal written policy or custom" of inaction or indifference toward medical care for the homeless or mentally ill, *see Valle*, 613 F.3d at 542; rather, he appears to assert that this policy is a custom or practice "so persistent and widespread as to practically have the force of law."  *See Pena*, 879 F.3d at 621-22.  In *Vess I* the court held that Vess had only made one allegation—insufficient on its own—of any DFD or City employee "displaying inaction or indifference toward a mentally ill or homeless person."  *Vess I*, 2022 WL 625080, at *6.  This allegation involved Cox's previous refusal to provide treatment to a homeless man.  *Id.*  The court also concluded that, even had Vess plausibly pleaded three more instances of refusal to give medical care, "allegations (as here) of a few or multiple incidents over the course of nearly two decades of Cox's employment, within a large city fire-rescue department, are insufficient to plausibly allege a pattern."  *Id.* at *7.

---

policies, Vess appears to ignore one of the policies in his response.  He mentions only in passing in a footnote the policy of "maintaining a policy of inaction and an attitude of indifference towards providing medical treatment for mentally ill persons and homeless people in order to get them off the streets."  P. Resp. to City of Dallas Mot. to Dis. (ECF No. 45) at 13 n.2.  The court addresses this policy below.  *See infra* § IV(E).

The SAC fails for the same reasons to allege a policy of "displaying inaction or indifference toward a mentally ill or homeless person."  In the SAC, Vess alleges, as before, that Cox refused to provide medical care to a homeless man, and that Cox failed to provide medical care to certain others (without specifying whether those persons were homeless or mentally ill).  Vess also alleges that DFD generally provides lesser treatment to homeless populations.  He does not, however, add allegations that any DFD employee refused to provide medical care to anyone who was homeless or mentally ill.

Accordingly, as the court has previously held, even assuming *arguendo* that Vess has pleaded four instances of refusal to render aid, his allegations of a few or multiple incidents over the course of a decade or longer (in a city the size of Dallas) are insufficient to plausibly allege a pattern so well-settled as to constitute municipal policy.  *See id.*; *Pineda*, 291 F.3d at 329-31 ("Eleven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces."); *Taylor v. El Centro Coll.*, 2022 WL 102611, at *9 (N.D. Tex. Jan. 10, 2022) (Fitzwater, J.) ("[T]wo alleged incidents of discrimination do not plausibly plead a pattern so common and well-settled as to constitute a custom that fairly represents municipal policy."); *see also Moreno v. City of Dallas*, 2015 WL 3890467, at *9 (N.D. Tex. June 18, 2015) (Boyle, J.) (holding that eight instances of similar conduct did not constitute a pattern).[22]

_____

[22]The only additional, potentially relevant allegation that Vess has added since his last complaint is a conclusory one: that DFD provides lesser care to homeless people.  But this

F

But unlike in *Vess I*, the court holds that Vess *has* alleged sufficient facts for the court to draw the reasonable inference that the City has a "*de facto* policy and/or custom of protection for previously disciplined personnel by refusing to terminate or separate from employment individuals unfit to serve as members of the Dallas Fire Department despite good cause for termination and the risk these individuals pose to the public."  SAC ¶ 45(d). And the court concludes that Vess has plausibly pleaded that this policy was the moving force behind Cox's actions.  The second element is not at issue.[23]

1

As to the first element of his *Monell* claim, Vess does not appear to allege the existence of an official, written policy to protect previously disciplined and unfit personnel from termination, but seems instead to allege a practice or custom.

In *Vess I* the court concluded that one instance of the City's refusing to fire someone

_____

allegation does not enable the court to draw the reasonable inference that there is a persistent and widespread practice of *inaction* or *not providing* medical care; rather, it only supports the reasonable inference that homeless people received *inferior* care, but care nonetheless.

[23]The City states in a footnote that it "assumes [there was] a constitutional violation" and that Vess has plausibly pleaded that any unconstitutional policy was adopted by the relevant policymaker.  D. City of Dallas Mot. to Dis. (ECF No. 36) at 7 n.2.  Although Vess disagrees with the City's identification of the appropriate final policymaker, given that the City does not dispute this element of a municipal liability claim, the court will assume *arguendo* for the purposes of the City's motion that Vess has plausibly pleaded the identity of a policymaker with final policymaking authority (i.e., the second element of his *Monell* claim).  *See Piotrowski*, 237 F.3d at 579 ("Since the City chose not to pursue this angle of defense [on the second element of a *Monell* claim], no more need be said of it.").

was insufficient to plausibly allege a persistent and widespread custom. *See Vess I*, 2022 WL 625080, at *8. But in the SAC Vess has added allegations that plausibly plead that the City has a "persistent and widespread" practice of protecting individuals who are unfit to serve as members of the DFD—so-called "bad apples"—despite their misconduct. What distinguishes *Vess I* from the instant decision is not simply the increased number of pleaded examples of the City's failing to terminate employees who engaged in misconduct—although this is relevant[24]—but that Vess has added specific allegations that support his theory and provide context. *Cf. Moreno*, 2015 WL 3890467, at *9 ("[A]cts suggesting an average of less than two incidents of excessive force per year over the course of five years are not sufficient to indicate a pattern of abuses, *especially without any further context from Plaintiff*." (emphasis added)).

For example, in *J.T. v. Uplift Education*, 2022 WL 283022 (N.D. Tex. Jan. 31, 2022) (Fitzwater, J.), which the court referenced in *Vess I*, 2022 WL 625080, at *7 n.14, the plaintiff alleged that three of the four girls interviewed in a school had reported sexual assault by their classroom teacher. *Uplift Educ.*, 2022 WL 283022, at *2. But in addition to the number of examples alleged, the plaintiff pleaded "detailed allegations" that the accused-teacher had a dark, secluded classroom and had a walled-off section of the classroom; that the school tolerated the sexual abuse and knew about the risk of sexual abuse; and that the

---

[24]The City focuses its briefing on the number of incidents alleged. *Cf. Jackson v. Valdez*, 852 Fed. Appx. 129, 136 (5th Cir. 2021) (per curiam), *cert. denied*, ___ S.Ct. ___, 2022 WL 145189 (U.S. Jan. 18, 2022) ("[W]e have no rigid rule regarding numerosity to prove a widespread pattern of unconstitutional acts.").

assaults occurred during the teacher's entire tenure. *Id.* at *1-2. These additional allegations made the plaintiff's allegation of custom or policy plausible. *Id.* at *2.

The same is true here. To support a failure-to-discipline policy, the Fifth Circuit has suggested that there be an indications of "systematic inattention" to complaints of misconduct and of "a purely formalistic investigation" in response to incidents of misconduct. *Piotrowski*, 237 F.3d at 582. As in his prior first amended complaint, Vess alleges in the SAC one instance in which the City sought to protect an individual (Cox) who was potentially unfit to serve. Vess cites a newspaper headline that states that DFD did not conduct an internal affairs investigation of Cox after his confrontation with Vess, and he alleges that DPIU "quietly cleared Cox." SAC ¶ 23. Vess also asserts that the District Attorney's Office expressed remorse for not initiating an indictment of Cox and not conducting a thorough investigation. *Id.* ¶ 24. Finally, Vess alleges that DPIU and DFD worked to ensure that a deeper investigation was not done, by *inter alia* interviewing only police officers (not DFD personnel) about the Cox-Vess confrontation and delaying handing over the video of the confrontation. *Id.* ¶ 25.[25]

But in addition to the foregoing allegations, the SAC alleges that DFD has retained employees who engaged in misconduct such as refusing to render care to an individual based on sexual orientation; refusing to a transport a child to the hospital because the paramedic

---

[25]The City is correct that this allegation alone would be insufficient, as the court held in *Vess I. See Pena*, 879 F.3d at 622 n.14 ("[A] plausible claim requires more than a recitation of the incident in which the plaintiff was personally involved.") (collecting cases).

thought the mother was lying about the seriousness of her child's illness; refusing to treat a man with a terminal condition because the paramedic believed the man already dead; and refusing to follow standard procedures for a gunshot wound.[26] The SAC also alleges that this conduct was conduct that justified termination.

What is more, Vess alleges that there are no instances of termination of a paramedic in the last 30 to 40 years in DFD for mistreatment of patients;[27] that there is a culture of not terminating DFD employees and protecting them despite egregious misconduct; and that there is a code of silence and a review process designed to keep "bad apples" on the force. And finally, Vess points to DFD procedures that encourage employees to avoid documenting inappropriate comments, a policy that is consistent with a custom of employees' not reporting and not being terminated for misconduct.[28]

---

[26]The City posits that Vess has not made any additional allegations regarding "when or how" the code of silence has protected DFD employees or when many of the events transpired. D. City of Dallas Mot. to Dis. (ECF No. 36) at 19. The court declines to require this type of detailed information at the motion to dismiss stage.

[27]The City is correct that some of Vess's allegations may, in isolation, require that the court draw inferences. But when deciding a Rule 12(b)(6)-based motion to dismiss, it is axiomatic that the court must draw all reasonable inferences in Vess's favor. *See Lovick*, 378 F.3d at 437.

[28]The City contends that, to show a pattern, Vess must allege a pattern of similar, prior incidents "fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party." D. City of Dallas Mot. to Dis. (ECF No. 36) at 17 (citing *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). The City is correct that, in some cases, to plead a custom the plaintiff must allege similar acts. *E.g.*, *Fuentes v. Nueces Cnty., Tex.*, 689 Fed. Appx. 775, 778 (5th Cir. 2017) (per curiam); *Vess I*, 2022 WL 625080, at *7 n.15. But the pattern establishing the policy need not be similar to the constitutional violation when the plaintiff alleges a facially constitutional policy that gives rise to municipal liability. *See*

These allegations plausibly support Vess's claim that the City has a policy "of protection for previously disciplined personnel by refusing to terminate or separate from employment individuals unfit to serve as members of the Dallas Fire Department despite good cause for termination and the risk these individuals pose to the public."  SAC ¶ 45(d); *Mitchell v. City of New Orleans*, 184 F.Supp.3d 360, 371-72 (E.D. La. 2016) (holding that plaintiff had plausibly alleged a custom where plaintiff alleged, *inter alia*, "a custom of condoning a culture within the NOPD in which NOPD personnel had the reasonable belief that their actions would not be properly monitored and that their misconduct would not be thoroughly investigated or sanctioned, but instead would be tolerated and approved."); *Sanchez v. Gomez*, 283 F.Supp.3d 524, 543 (W.D. Tex. 2017) ("This alleged lack of disciplinary measures plausibly suggests to the Court that EPPD had a blanket policy of not disciplining officers who were responsible for using excessive force."); *Barr v. City of San Antonio*, 2006 WL 2322861, at *4 (W.D. Tex. July 25, 2006) (although the court had reservations, holding that plaintiff's allegations that police officers felt emboldened to use excessive force and make unlawful arrests, and the city had been sued for similar claims four

---

*Piotrowski*, 237 F.3d at 581 (holding that policy of acquiescing in "moonlighting" was proved by evidence suggesting third-party had hired off-duty police officers for years); *Edwards v. Oliver*, 2019 WL 4603794, at *10 (N.D. Tex. Aug. 12, 2019) (Rutherford, J.), *rec. adopted*, 2019 WL 4597573 (N.D. Tex. Sept. 23, 2019) (Lynn, C.J.).  A "facially innocuous" or facially constitutional policy, however, requires that the plaintiff show deliberate indifference (which itself may require the plaintiff to show a pattern of similar violations).  *See Covington v. City of Madisonville, Tex.*, 812 Fed. Appx. 219, 225-27 (5th Cir. 2020) (per curiam).  But here the court need not analyze deliberate indifference because the City did not "insist upon proof of deliberate indifference," so "that standard is waived." *Piotrowski*, 237 F.3d at 581.

other times, taken together, were sufficient); *see also Ramirez v. Escajeda*, 298 F.Supp.3d 933, 943 (W.D. Tex. 2018) ("Plaintiffs offered detailed accounts of eight other instances of the alleged use of excessive force against mentally ill persons from 2013 to 2016 and various statistics indicating that the use of force against the mentally ill is an issue for the City of El Paso."); *Robbins v. City of Miami Beach*, 2009 WL 3448192, at *2 (S.D. Fla. Oct. 26, 2009) ("The plaintiff claims that when incidents of excessive force are investigated, the investigation reports omit unfavorable evidence, exclude statements of non-police witnesses, and rely solely on the word of the police officers involved. These factual allegations are sufficient to support municipal liability . . . ."); *Starstead v. City of Superior*, 533 F. Supp. 1365, 1369 (W.D. Wis. 1982) ("[I]n the instant case, plaintiffs have alleged a systematic pattern of misuse of police dogs, and have buttressed this allegation with claims of five separate incidents involving seven persons.").[29]

2

As to the third element of Vess's *Monell* claim, the City contends that Vess's policy asks the court to draw the difficult causal leap that a policy of protecting bad apples caused Cox to think he could assault a homeless man. Without suggesting a view on how this

---

[29]Some of the cases cited focus on a pattern of protection for *excessive force* violations. The court does not address deliberate indifference, *see supra* note 28, so it does not analyze whether the pattern alleged by Vess shows deliberate indifference to the risk of constitutional violations. *See Covington*, 812 Fed. Appx. at 225 ("[W]here an alleged policy is facially innocuous, establishing the requisite official knowledge[] necessitates that a plaintiff demonstrate that the policy was promulgated or 'implemented with deliberate indifference to the known or obvious consequences that constitutional violations would result." (internal quotation marks omitted)).

argument might fare at the summary judgment stage, the court concludes that it is insufficient in the context of a Rule 12(b)(6) motion to dismiss, which assesses the sufficiency of the SAC.

Taking the facts alleged in the SAC as true, the court concludes that Vess has plausibly pleaded that this policy "of protection for previously disciplined personnel by refusing to terminate or separate from employment individuals unfit to serve as members of the Dallas Fire Department despite good cause for termination and the risk these individuals pose to the public," SAC ¶ 45(d), was the moving force behind Cox's actions. "The 'moving force' inquiry imposes a causation standard higher than 'but for' causation." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015). There must be a "direct causal connection . . . between the policy and the alleged constitutional deprivation." *Id.* (quotation omitted). Here, Vess has plausibly pleaded that this policy was known throughout the department and that the policy caused Vess's injuries.

This conclusion is not an unfounded outlier. Numerous courts have held that a policy of lack of discipline and protection plausibly emboldens officers to engage in misconduct. *See Gentile v. Cnty. of Suffolk*, 926 F.2d 142, 153 (2d Cir. 1991); *Ramirez v. Escajeda*, 2021 WL 3713064, at *48 (W.D. Tex. Aug. 20, 2021) ("[A] reasonable jury could infer that Escajeda may have deemed that using force was an 'easy fix' to complex situations like the one he encountered on June 23, 2015, because Chief Allen failed to reinforce the right behavior through discipline."); *Sanchez*, 283 F.Supp.3d at 544 ("[T]he failure to discipline other officers created a culture that emboldened the officers in this case to engage in the

conduct that resulted in Salas-Sanchez's death."); *Spearman v. Elizondo*, 230 F.Supp.3d 888, 896 (N.D. Ill. 2016) ("[I]t is inferable that lack of discipline (and its deterrent effect) is a municipal policy that caused, in some sense, the bad acts alleged in the complaint." (quotation omitted)); *Pipitone v. City of New York*, 57 F.Supp.3d 173, 196 (E.D.N.Y. 2014) ("It is plainly foreseeable that the failure to discipline an officer who has been caught red-handed might embolden that officer's close associates and colleagues to engage in similar misconduct."); *Teasley v. Forler*, 548 F.Supp.2d 694, 707 (E.D. Mo. 2008).

Accordingly, the court holds that Vess has plausibly pleaded that this policy was the moving force behind Cox's actions.

## G

Vess's remaining allegations appear to assert policies or customs based on failure-to-train theories. Although failure to train is a separate theory of municipal liability, *see Byers*, 2012 WL 677203, at *16, the same standard applies both to a failure-to-train claim and to a municipal liability claim, *see, e.g.*, *Valle*, 613 F.3d at 544 (citing *Roberts*, 397 F.3d at 293). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61.

## 1

To plead a plausible claim under a failure-to-train theory, Vess must allege facts that enable the court to draw the reasonable inference that "(1) the training procedures were inadequate; (2) the city's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [Vess's] injury." *Carnaby v.*

*City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (citing *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000)).

The second element—"deliberate indifference"—is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing of simple or even heightened negligence will not suffice." *Valle*, 613 F.3d at 542, 547. "[T]o satisfy the second prong and prove that the municipality acted with deliberate indifference, the plaintiff must generally 'show a pattern of violations and that the inadequate training or supervision was obvious and obviously likely to result in a constitutional violation.'" *Byers*, 2012 WL 677203, at *16 n.39 (quoting *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010)) (internal quotation marks and brackets omitted).

"Deliberate indifference may be proven in one of two ways." *Jackson*, 852 Fed. Appx. at 136; *Littell*, 894 F.3d at 624 ("*Canton* envisioned two means of proving deliberate indifference."). The plaintiff may show a "pattern of similar constitutional violations," which shows that policymakers have "conscious disregard for the consequences of their action." *Connick*, 563 U.S at 62. This proof-by-pattern method is "ordinarily necessary." *Bd. of Cty. Comm'rs*, 520 U.S. at 409.

The plaintiff may also show "that the risk of constitutional violations was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy." *Littell*, 894 F.3d at 624 (citing *Bd. of Cty. Comm'rs*, 520 U.S. at 409). "Such an inference is possible in only very narrow circumstances." *Id.* As the Supreme Court stated in *City of Canton*:

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*City of Canton*, 489 U.S. at 390 n.10; *see also Pena*, 879 F.3d at 624.  A need for training is so obvious when the risk occurs "in recurrent situations that a particular employee is certain to face."  *City of Canton*, 489 U.S. at 396 (O'Connor, J., concurring).  This exception is generally reserved for when the employee has received *no* training at all.  *Pena*, 879 F.3d at 624; *Littell*, 894 F.3d at 624 n.5.  Indeed, "there is a difference between a complete failure to train[] . . . and a failure to train in one limited area."  *Pena*, 879 F.3d at 624 (quotation marks omitted).

2

Vess's first failure-to-train theory—that the City is "providing inadequate training regarding how to detain and treat mentally ill persons and homeless persons," SAC ¶ 45(b)—fails because Vess has not plausibly pleaded the second element of his failure-to-train theory: deliberate indifference.[30]

As in the previous complaint, Vess alleges that the City knows that its DFD personnel may get into potential physical encounters, but it provides no training on unreasonable use

_____

[30]The court does not reach the first element (whether Vess has plausibly pleaded that the training was inadequate), or the third element (whether the failure to train was the moving force behind Vess's injuries).

- 32 -

of force or de-escalation.  He also asserts that the DFD has promulgated policies related to use-of-force by paramedics and firefighters, which suggests that the City knows that DFD personnel face potentially physical encounters.  Vess asserts that DFD has a policy that requires its personnel to delay their response to violent calls and await the arrival of police. And he alleges that DFD has policy that requires paramedics to request the presence of a police officer if a mentally ill patient becomes violent.

But as discussed in *Vess I*, Vess's allegations (which have not changed from the prior complaint) are insufficient.  *See Jackson*, 852 Fed. Appx. at 135-37 (holding that plaintiff failed to prove deliberate indifference when plaintiff included "allegations of two incidents of strip searches and four incidents of sex-based classifications of two transgender people in a span of five years."); *Jason v. Tanner*, 938 F.3d 191, 198 (5th Cir. 2019) ("[T]hree yard fights with brooms and one with a mop just aren't enough to constitute a pattern.").  Without such a pattern, "decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  *Connick*, 563 U.S at 62. Accordingly, the court cannot draw the reasonable inference from the allegations of the SAC that the City was deliberately indifferent in its failure to train its employees in "how to detain and treat mentally ill persons and homeless persons."  SAC ¶ 45(b).

3

Vess's second failure-to-train theory is that the City "inadequately supervis[ed], train[ed], controll[ed], assign[ed], and disciplin[ed] City of Dallas Fire Department paramedics, including Defendant Cox, who Defendant City of Dallas knew, or in the exercise

- 33 -

of reasonable care, should have known were committing such egregious acts." SAC ¶ 45(c). And the theory posits that, given Cox's disciplinary history, "[the beating] was a highly predictable outcome given his history." *Id.*

Because the SAC does not make any pertinent allegations that are different from the prior complaint, this theory fails for the same reasons discussed in *Vess I. See Vess I*, 2022 WL 625080, at *10-12.[31]

\* \* \*

Accordingly, for the reasons explained, the court grants in part and denies in part Cox's motion for judgment on the pleadings, denies the City's motion to dismiss, and denies Vess's alternative request for leave to amend.

**SO ORDERED**.

June 23, 2022.

SIDNEY A. FITZWATER
SENIOR JUDGE

---

[31]Vess's response brief appears to offer only arguments that this court has already rejected. *Compare* P. Resp. to City of Dallas Mot. to Dis. (ECF No. 45) at 20 ("[T]he Court also cited *Littell* in its Memorandum Opinion and Order. But respectfully, Plaintiff believes that *Littell* supports Plaintiff's claims and is not so readily distinguishable."), *with Vess I*, 2022 WL 625080, at *11 (relying on *Littell*).

- 34 -